**In re Todd Anthony GREENWALT, Debtor.**

**Cynthia GREENWALT, Plaintiff,**

**v.**

**Todd Anthony GREENWALT, Defendant.**

Bankruptcy No. 95–07100.
Adversary No. A95–10262.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Sept. 23, 1996.

Patricia Alex Freeman, Seattle, WA, for plaintiff.

Todd A. Greenwalt, Seattle, WA, pro se.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Bankruptcy Judge.

The parties were married for nearly ten years. In April of 1995, after a three-day trial, a decree of dissolution was entered. The decree provided in part that each party was assigned and ordered to hold the other harmless from certain community debts. Additionally, the debtor was ordered to pay a portion of the plaintiff's attorney's fees. The debtor filed a chapter 7 petition in August of 1995, in order to discharge these and other obligations. The plaintiff filed this action under 11 U.S.C. §§ 523(a)(5) and (a)(15) to determine the dischargeability of the obligations assigned to the debtor in the decree. This Court previously entered partial summary judgment against the debtor on the issue of the plaintiff's attorney's fees, finding that they are in the nature of support and are therefore nondischargeable under § 523(a)(5). The present issue is whether the debtor's obligation to hold the plaintiff harmless from debts assigned to him in the decree are dischargeable under § 523(a)(15).[1]

## FACTS

The plaintiff is 34 years old, and the debtor is 33 years old. They have one daughter, age 10, who resides with the plaintiff. The debtor has substantial visitation rights. Both parties have bachelors' degrees, the plaintiff's in public administration and the defendant's in electrical engineering. At the time the decree of dissolution was entered, the debtor worked at Olin Aerospace, earning over $50,000 per year. The plaintiff worked at Burlington Environmental and earned approximately $23,000 annually. The plaintiff suffers from a condition that will require open-heart surgery within a year. The debtor reported no health problems and appears to be fit.

The debtor has a child support obligation of $569 per month. In addition, he will be required to pay maintenance at such time as the plaintiff undergoes heart surgery and during her recovery, at the rate of $200 per month for a maximum of six months. Finally, the debtor was ordered to pay $3,500 of the plaintiff's attorney's fees, of which $1,750 was satisfied by offset upon entry of the decree. The remaining $1,750 was to have been paid at the rate of $100 per month.

By way of property division, each party received the auto and other personalty in his or her possession. The plaintiff was awarded the family home, subject to an obligation to pay the debtor $25,000 upon entry of the decree plus $5,750 by January, 1999. In addition, the plaintiff was assigned a debt of $19,000 which was the obligation of both parties to the plaintiff's parents (borrowed for the down payment on the home), plus an additional $9,350 owing to her parents, $21.50 owing to the IRS, and $1,239 owing on a Sears credit card. The debtor was ordered to pay $8,800 to Seafirst Bank, $5,369.50 to the IRS, $2,500 to Kent Tomimoto, approximately $15,500 on various credit cards, and

---

1. It should be clarified that the liability at issue here is the debtor's obligation to hold the plaintiff harmless on the debts assigned to him in the decree. His liability on the underlying debts has been discharged.

an additional $9,350 owing to the plaintiff's parents.

Upon entry of the decree, the plaintiff paid the debtor $14,613, consisting of the $25,000 she owed him, less approximately $8,800 owed to Seafirst and $1,750 of her attorney's fees. At the time of trial in this matter, the debtor owed a total of approximately $30,850 in debt assigned to him, and the plaintiff owed the debtor $5,750. Offsetting these amounts, the debtor owes the plaintiff a net of roughly $25,000 on his hold harmless obligations.

Both parties have undergone changes since the divorce. The plaintiff lost her job with Burlington Environmental in June of 1995 but went to work for NBBJ Architecture Design Planning in March of 1996, where she has a gross monthly income of $2,374 for a net of $1,805. Adding child support from the debtor, she has a net income of $2,374. She rents out the house awarded to her in the decree of dissolution. However, the rental produces minimal income above the mortgage and other expenses. As to the forthcoming surgery, 80% will be paid by insurance. She will have to bear the balance of the cost. The plaintiff's budgeted expenses at this time are $2,347 per month, including $565 in payments on debts incurred while she was unemployed.

The debtor left his job at Olin Aerospace in November of 1995, and then went to work at Metawave Communications in December of that year. He left Metawave several days before trial in this cause. The plaintiff contends that his termination was voluntary, calculated, and temporary. The debtor did not acknowledge that he left his employment voluntarily but did concede that he would have no trouble finding another job at the same or similar rate of pay.

The debtor's annual income at Metawave was $2,177.08 every two weeks, for a total of $56,602 per year. Thus a conservative estimation of his earning capacity is $52,000, and this amount of income will be imputed to him for purposes of this proceeding. Deducting $12,500 for mortgage interest, real estate taxes, and auto license, and an additional $5,000 for two exemptions, the debtor's taxable income would be approximately $34,500

per year. Applying 1995 tax tables to this amount, the debtor's income tax for 1995 would be $6,632. The FICA deduction on $52,000 would be $3,988. Thus the debtor's total tax and FICA liability should be approximately $10,620, or $885 per month. Subtracting this amount from a gross monthly income of $4,333 leaves a monthly net income of $3,448.

When the decree was entered, the debtor was paying rent of $670 per month and utilities of $80 per month. Two months after the divorce was final and two months before he filed this bankruptcy case, the debtor purchased a home. At the time of trial, his mortgage payment, together with taxes and insurance, were $1,126 per month. His utilities were $110 per month. In addition, he had budgeted $85 per month for home maintenance. Since the decree, his total housing expense went from $750 to $1,321 each month. He failed to pay child support for three months in 1995. As a result, his current payment is $750 until the arrearage is cured. The debtor's budgeted expenses, not including debt payments, total $3,122 per month. Before he fell behind in child support and took on the house payment, his living expenses were $2,370 per month. Included in his current budget is a $300 car payment, which will terminate in approximately one year. Not included is the maintenance obligation payment that will be activated at some undetermined time within the year.

## DISCUSSION

Pursuant to § 523(a)(15), debts arising in connection with a divorce decree but which are not covered by § 523(a)(5) are nondischargeable, unless (A) the debtor does not have the ability to pay them from discretionary income, or (B) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the other party. In the present case, it is conceded that the debts in question arose out of the decree of dissolution and that they are not covered by § 523(a)(5). The issues are thus whether the debtor has the ability to pay them and, if so, whether the balance weighs in his favor or the plaintiff's.

As a preliminary matter, the court must address the burden of proof. Since § 523(a)(15) became effective in October, 1994, it has engendered a flood of case law on the topic, none of which is binding on this Court. The majority of courts have adopted some form of burden-shifting, in which the plaintiff must show that the debt arises out of out of a property settlement or divorce decree and is not support-related, with the burden then shifting to the debtor to show an inability to pay or a balancing of equities in his favor. *In re Hill,* 184 B.R. 750 (Bankr. N.D.Ill.1995); *In re Phillips,* 187 B.R. 363 (Bankr.M.D.Fla.1995); *In re Florez,* 191 B.R. 112 (Bankr.N.D.Ill.1995); *In re Becker,* 185 B.R. 567 (Bankr.W.D.Mo.1995); *In re Carroll,* 187 B.R. 197 (Bankr.S.D.Ohio 1995); *In re Slover,* 191 B.R. 886 (Bankr.E.D.Okl.1996). This approach was rejected in *In re Butler,* 186 B.R. 371 (Bankr.D.Vt.1995), and more recently in *In re Dressler,* 194 B.R. 290 (Bankr.D.R.I.1996). Inasmuch as the statute and rules do not expressly allocate burdens, the *Butler* and *Dressler* courts follow *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), holding that a plaintiff in an action under Section 523(a) must prove his or her case by a preponderance of the evidence. This Court adopts the reasoning expressed in *Butler* and *Dressler,* and concludes that the burden of proof is on the plaintiff on all issues.

1. *Debtor's ability to pay.* Section 523(a)(15)(A) provides that debts incurred in connection with a dissolution should be discharged if the debtor does not have the ability to pay them "from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor...." In assessing the debtor's ability to pay, some courts have adopted the standard for a hardship student loan discharge pursuant to § 523(a)(8). *In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995); *In re Straub,* 192 B.R. 522 (Bankr.D.N.D.1996). However, at this point in time, the majority of courts have rejected this approach and have instead adopted the "disposable income" test of § 1325(b)(2). *In re Dressler,* supra; *In re Hill,* supra; *In re Carroll,* supra. This is appropriate, given the use of the phrase "reasonably necessary" in both sections of the Code, and further given the fact that § 523(a)(15) debts are dischargeable in Chapter 13. Under this standard, the court must critically assess the debtor's budgeted expenses to determine the minimum the debtor could afford to pay over a three-year period.

In this case, the debtor's net income is $3,448 per month.[2] As indicated previously, his budgeted expenses immediately after the divorce were $2,370, excluding bills. Thus at the time of the divorce, the debtor's disposable income was over $1,000 per month. The inquiry under § 523(a)(15), however, focuses on the debtor's current ability to pay.[3] At this time, the budget projected by the debtor leaves only $326 in disposable income.

The court need not accept the debtor's assessment of what expenses are "reasonably necessary." The changes in the debtor's budget are a result of purely voluntary assumption of an additional $752 per month in fixed expenses. His predicament was aggravated by his decision not to apply to his debts the $14,613 payment he received from the plaintiff on entry of the decree, preferring instead to enhance his lifestyle immediately. The debtor should not be permitted to direct the outcome of this proceed-

---

**2.** Where a debtor is unemployed or underemployed, the court will look to whether this condition is intentional or negligent or beyond debtor's control, and impute income according to the debtor's earning capacity if appropriate. *In re Florio,* 187 B.R. 654 (Bankr.W.D.Mo.1995). As noted previously, the plaintiff has alleged that the debtor left his job voluntarily in order to control the outcome of this trial. This issue is resolved by the debtor's stipulating to an imputed income of $52,000 per year, which translates to approximately $3,448 net per month.

**3.** Courts are not in accord as to the appropriate date for applying the analysis, this Court agrees with those who adopt the date of trial. See, e.g. *In re Hesson,* 190 B.R. 229 (Bankr.D.Md.1995), and *In re Dressler, supra.* See also *In re Carroll, supra* (date of bankruptcy petition), and *In re Hill, supra,* (Bankr.N.D.Ill.1995) (date of complaint).

ing by voluntary manipulations of either his income or his expenditures. *In re Florio,* 187 B.R. 654 (Bankr.W.D.Mo.1995); *In re Dressler, supra.*

■ An examination of the debtor's budget reveals moneys that can or will be available to pay debts. His car will be paid off in a year, for a savings of $300. His child support arrearage will be satisfied, for an additional $181. His $85 per month in home maintenance can be deferred. He will have an additional $200 maintenance obligation to the plaintiff, but only for a six-month period. Deducting the car payment, the extra child support, and home maintenance, and adding the alimony back in results in a savings of $366. Adding this to the $326 available under his own budget gives him total disposable income of $692. Rounding this figure down to $600, this will leave him $2,297 to live on, after paying child support. This is sufficient to meet his "reasonably necessary" expenses during the next three years.

■ Multiplying $600 by 36 months results in total payments of $21,600. This will not be sufficient to cover the $25,100 owed under the hold harmless clause plus plaintiff's attorney's fees. This raises the question whether the court has the authority to discharge some but not all of the debt. In *In re Comisky, supra,* the court drew an analogy to student loan hardship cases, viz. *In re Yousef,* 174 B.R. 707 (Bankr.N.D.Ohio 1994), and reduced the amount held to be nondischargeable. Others have followed suit, finding that the "all or nothing" approach is not mandated by section 523(a)(15) and is "clearly contrary to dictates of reasonable statutory interpretation as well as 11 U.S.C. § 523(a)(15)'s legislative history." *In re Smither,* 194 B.R. 102 (Bankr.W.D.Ky.1996). Accord, *In re McGinnis,* 194 B.R. 917 (Bankr.N.D.Ala.1996). Other courts have rejected this approach. See, e.g., *In re Taylor,* 191 B.R. 760 (Bankr.N.D.Ill.1996); *In re Thomas C. Florez, supra.*

This Court adopts the reasoning of the *Smither* court and concludes that a partial discharge is justified by § 523(a)(15), but not by analogy to § 523(a)(8). Section 523(a)(15) itself speaks to the dischargeability of "such debt," suggesting that the court may review

each liability separately. It is true that the obligations to the third-party creditors are discharged, while only the hold harmless in favor of the former spouse is subject to § 523(a)(15). Nevertheless, the liability to the former spouse is comprised of the various underlying obligations, and there is nothing to prevent the court from analyzing them separately.

■ This approach is supported by the fact that § 523(a)(15)(A) incorporates the disposable income test of Chapter 13, and that the liabilities are dischargeable in Chapter 13. It is further buttressed by the fact that § 523(a)(15)(B) specifically directs the court to assess the impact of discharge on both spouses, with the possible result that the discharge of some liabilities will impact the former spouse differently than others. Accordingly, this Court concludes that it is authorized to hold nondischargeable a portion of the debt owed to the plaintiff under the decree of dissolution. Whether and to what extent this result is justified in a particular case will depend on the application of § 523(a)(15)(B) to the facts of the case.

■ 2. *Balancing.* In balancing the benefit of the discharge to the debtor versus the detriment to the other party, the court must assess the totality of the circumstances, including the income and expenses of both parties, the ability of the other party to pay the debts, and the nature of the debts. *In re Hill, supra.*

■ The benefits of a discharge to the debtor are obvious. However, simply providing debtor with additional disposable income is not the kind of benefit Sec. 523(a)(15)(B) ought to protect. *In re Florio, supra.* While the fresh start is an important consideration, the debtor cannot be permitted to use bankruptcy simply to evade marital obligations, in the absence of bona fide financial problems.

■ The debtor's income and expenses have already been discussed. The plaintiff clearly does not have the ability to pay the debts from current income. She nets $2,374 per month and lists conservative expenditures totaling $2,347. She lives in an apart-

ment rather than the home she was awarded. The plaintiff's health being what it is, her finances are more likely to deteriorate than improve in the near future.

The parties have already been sued by Boeing Employees Credit Union, and both the Citibank mastercard and the Discover card debts have been assigned for collection. The plaintiff did not indicate any collection efforts by the IRS. However, she is vulnerable on the obligation, as is her home. Further, there is no indication whether Kent Tomimoto has pressured the plaintiff for payment, but there appears to be nothing to prevent him from doing so.

While the plaintiff lacks the ability to pay these debts from income, she is not judgment-proof. To place the entire burden of paying these debts on the plaintiff would place her and her interest in the house at risk. Conversely, the debtor has acquired a home of his own and can be moving forward with an earning capacity more than twice that of the plaintiff. As to these liabilities, the balance weighs in the plaintiff's favor, and the debtor's hold harmless obligation should not be discharged.

The debt to the plaintiff's parents is a different matter. The dissolution decree assigned to her $28,350 of the total debt owing to her parents. She also borrowed from them the $14,613 needed to pay the debtor on entry of the decree. While the parents are retired and need to be repaid, it is unlikely that they will threaten their daughter's investment in the home. They are co-owners with her and should be able to reach some accommodation on an appropriate disposition of the property. On balance, the Court concludes that the discharge of the debt owing to the debtor's parents is more beneficial to the debtor than it is detrimental to the plaintiff, and therefor the debtor should be discharged of his obligation to hold her harmless from this debt.

## CONCLUSION

1. As between the parties, the balance still owed on the plaintiff's attorney's fee is nondischargeable under Section 523(a)(5). The debtor's obligation to hold the plaintiff harmless from the debts owed to the IRS, Kent Tomimoto, Discover card, Citibank, and the Boeing Employees Credit Union are not dischargeable pursuant to § 523(a)(15). The obligation to hold the plaintiff harmless from the debt owed to the plaintiff's parents is discharged.

2. The plaintiff should recover judgment against the debtor for her costs incurred in this proceeding which shall be limited to the filing fee and costs of service.

3. This memorandum opinion shall serve as the Court's Findings of Fact and Conclusions of Law. Additional Findings and Conclusions are not necessary.