**In re Edward K. FREY, Debtor.**

**Magaret FREY, Plaintiff,**

**v.**

**Edward K. FREY, Defendant.**

**Bankruptcy No. 96–61404.
Adversary No. 96–70128.**

United States Bankruptcy Court,
N.D. New York.

Dec. 30, 1996.

Edward K. Frey, Syracuse, NY, pro se.

Michaels and Michaels (Martin M. Michaels, of counsel), Syracuse, NY, for Plaintiff.

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before this Court is an adversary proceeding commenced by a complaint dated May 15, 1996 ("Complaint"), filed by Margaret Frey ("Plaintiff") against debtor Edward K. Frey ("Debtor"), seeking a determination that certain debts which Debtor assumed pursuant to a divorce decree constitute maintenance and support and therefore are not dischargeable under § 523(a)(5) of the United States Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Alternatively, if the Court determines that some or all of these debts do not constitute maintenance or support, Plaintiff requests that these obligations be determined to be non-

dischargeable under Code § 523(a)(15) as debts incurred in the course of a divorce or in connection with a divorce decree. In the Complaint, Plaintiff also requests a denial of discharge under Code § 727.[1] A trial on this matter was held on October 9, 1996, and the parties were subsequently granted an opportunity to submit memoranda of law to the Court. The matter was submitted for decision on October 31, 1996.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(I) and (J).

### FACTS

Plaintiff and Debtor were married in May 1977 and have two children, Edward and Kenneth Frey, ages 14 and 18 respectively. In January 1994, Plaintiff formally commenced divorce proceedings against Debtor in the Supreme Court of the State of New York, Onondaga County. On October 5, 1994, the Honorable Donald K. Comstock, Judicial Hearing Officer, issued a Decree and Judgment of Divorce ("Divorce Decree") dissolving the marriage and awarding sole custody of the children to Plaintiff, subject to reasonable visitation by Debtor.

Prior to their divorce, Plaintiff and Debtor lived in and owned a single family residence ("principal residence") located in Syracuse, New York, which is encumbered by first and second mortgages held by Key Bank Mortgage, Inc. ("Key Bank"). At the time of the divorce, the first mortgage had a remaining balance of $7,000, and the second mortgage had a balance of $27,000. The proceeds from the second mortgage were used to purchase a motor home which belonged to both parties.

The Divorce Decree incorporated an oral stipulation by the parties made on August 25, 1994 ("Stipulation"), which set forth certain terms regarding their divorce. First, Debtor would be required to pay Plaintiff $264.56

---

**1.** At the conclusion of the trial, Plaintiff agreed to discontinue her cause of action under Code § 727, and therefore the Court will not address this cause of action other than as hereinafter set forth.

every two weeks for child support, continue both minor children as covered beneficiaries under his health insurance plan, and pay 57% of any reasonable and necessary medical and related expenses for the children not covered by insurance. Plaintiff would be responsible for the other 43% of expenses not covered by Debtor's medical insurance.

Second, the Divorce Decree provided that Debtor would "become solely responsible for all of the existing debt" of the parties' second mortgage on their principal residence, totaling $27,000, and would release and hold Plaintiff harmless from any debt associated with either the motor home or with the second mortgage secured by the principal residence. Furthermore, should Debtor choose to sell the motor home, he agreed to apply the sale proceeds to retire the second mortgage. Plaintiff agreed to be solely responsible for the debt of the first mortgage on the principal residence, including the real estate taxes.

Third, pursuant to the Divorce Decree, Debtor would relinquish all of his rights, title and interest in the principal residence in favor of Plaintiff and would further provide her with 30% of his pension plan which he earned from May 1977, through January 1994.

Fourth, regarding several credit card debts, the two parties agreed that Debtor would be fully and solely responsible for their Caeser's MasterCard account with a balance of $6,000, as well as their AAA Visa account with a balance of $4,800. However, Plaintiff and Debtor would be equally responsible for their Sears credit card account with a balance of $600, and equally responsible for their Discover Card account with a balance of approximately $1,600.

Fifth, Debtor would reimburse Plaintiff $2,500, without interest, for her share of the couple's savings account, which he agreed to pay by wage deduction in monthly payments of $150.

Sixth, the parties would each take a 50% share of the total value of Debtor's life insurance policy with a balance of approximately $5,000 (approximately $2,500 each).

Seventh, Debtor agreed to be solely responsible for the debt which the parties owed to Debtor's brother. Debtor agreed to hold Plaintiff harmless from any liability associated with such debt in consideration of Plaintiff's transfer in the entirety of all existing memberships in various resorts and clubs which they purchased shortly after buying the motor home.

Finally, regarding income taxes, the parties agreed to share equally Debtor's federal and state tax refunds, totaling $555.64 and $71.17 respectively, and that Debtor's share of these refunds would be applied toward his 57% obligation to pay for his children's medical expenses, which amounted to $456 at that time. They also agreed that Debtor and Plaintiff could each claim one child as a deduction on their state and federal tax returns in the years the child support payments were current. When the time came that only one child would be eligible to be claimed as a deduction, the parties would alternate years in claiming that child.

Both parties agreed to "mutually waive any claim of maintenance or spousal support which either may have against the other," in light of the duration of their marriage, their ages, and respective similar earning potentials. *See* Stipulation, at 9. Upon the Hearing Officer's inquiry, both parties orally expressed their satisfaction with the terms of the Stipulation and represented to that court that they understood that the terms would become part of a legally enforceable divorce decree.

Subsequent to the divorce, Debtor filed for bankruptcy relief under chapter 7 of the Code on April 1, 1996, and Plaintiff filed this adversary complaint on May 16, 1996, seeking a determination that certain debts assumed by Debtor are nondischargeable.

Presently, Plaintiff works between thirty and forty hours per week for Syracuse University as a parking lot attendant at an hourly wage of $8.00. She also works extra days and special events on a regular basis. In 1995, Plaintiff's adjusted gross income was $18,445. *See* Plaintiff's exhibit F, "1995 U.S. Income Tax Return." She currently resides in the principal residence with the couple's younger son, who is dependent on her and

for whom Debtor provides $212 in child support every two weeks. Regarding her financial condition, Plaintiff claims she is unable to meet her obligations because in addition to the first mortgage payments, she has been making the $560 monthly payments on the second mortgage since May of 1996, despite Debtor's assumption of the second mortgage loan. Plaintiff stated that she is struggling financially in light of her limited income and obligation to pay back support to her eldest son. According to Plaintiff's testimony, she understood that Debtor agreed to assume the second mortgage debt as well as the credit card debts in lieu of maintenance payments, and that he also agreed to hold her harmless on those debts.

Debtor presently works full time for the Onondaga County Department of Corrections as a corrections officer, a job he has held for approximately twenty-two years. In the past, Debtor has also worked at Shoppingtown Mall as a security guard to generate additional income. In 1995, his adjusted gross income was $35,274. *See* Plaintiffs exhibit E, "1995 U.S. Income Tax Return." Debtor currently provides Plaintiff with $106 per week in child support for the couple's younger son ($212 every two weeks) and also pays $75 every two weeks to his eldest son to cure arrears totaling $1,500 for back support as required by a Family Court order. He does not dispute his continuing obligation to provide child support, nor does he dispute his assumption of the second mortgage debt. Debtor attempted to retire the second mortgage debt by selling the motor home. Debtor testified that he currently rents an apartment for $560, which includes some but not all of his utilities. He also has indicated that he is struggling financially. He has not made any payments on the home equity loan or on any of the credit card debts, and also owes his former attorney $735 for services rendered in connection with his divorce. He does not own a car and instead uses his brother's car, for which he is responsible for maintenance.

### ARGUMENTS

In view of the Divorce Decree and Debtor's subsequent filing for bankruptcy under chapter 7, Plaintiff requests the Court to find the following four debts nondischargeable: (1) the second mortgage debt; (2) the Discover Card debt; (3) the AAA Visa credit card debt; and (4) the Sears credit card debt. Plaintiff argues that these debts constitute maintenance and support, making them nondischargeable under Code § 523(a)(5). Alternatively, Plaintiff argues that the debts should be held nondischargeable under Code § 523(a)(15), since Debtor is better and more able to meet the obligations than she is, particularly since he will have more funds available to apply to the obligations he assumed pursuant to the Divorce Decree as a result of his discharge in bankruptcy.

In response, Debtor does not squarely challenge Plaintiff's argument that his assumption of the debts at issue was meant to be in lieu of maintenance or support. Rather, he argues that he is financially incapable of honoring the terms of the Divorce Decree which pertain to the home equity loan and credit card debts. Debtor assertively maintains that he cannot afford to pay these debts.

### DISCUSSION

Exceptions to discharge are to be narrowly construed in favor of the debtor and against the creditor to effectuate the fresh start purpose of the bankruptcy laws. *Glenn v. Hrim (In re Hrim)*, 196 B.R. 237, 241 (Bankr.N.D.N.Y.1993); *Chamorro v. Gonzalez (In re Gonzalez)*, 107 B.R. 778, 780 (Bankr.S.D.Fla.1989). Dischargeability issues are to be determined by the substance of the liability rather than its form. *Pepper v. Litton*, 308 U.S. 295, 305–06, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939). Regarding exceptions found in Code § 523(a), the burden of proof rests with the plaintiff to convince the court by a preponderance of the evidence that the particular debt should not be discharged. *Hrim*, 196 B.R. at 241–42 (citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Plaintiff in this case has alleged that the second mortgage and credit card debts are nondischargeable under Code § 523(a)(5) or (a)(15). Therefore, the Court will examine

each subsection and its applicability to the particular debts at issue.

## A. Code § 523(a)(5)

▪ Under the Code, a debt owed "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record" is not dischargeable. 11 U.S.C. § 523(a)(5). In contrast, property settlements are dischargeable in bankruptcy. *See Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2d Cir.1993); *Zaera v. Raff(In re Raff)*, 93 B.R. 41, 44 (Bankr. S.D.N.Y.1988); *see also Parker v. Donahue (In re Donahue)*, 862 F.2d 259, 262 (10th Cir.1988). For purposes of determining nondischargeability under Code § 523(a)(5), the characterization of an obligation as alimony, maintenance or support is a question of federal bankruptcy law. *See Brody,* 3 F.3d at 39; H.R. Rep No. 95–595, 95th Cong., 1st Sess. 364 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6320 ("What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law"). It has been observed, however, that Congress could not have intended bankruptcy laws regarding alimony and support to be formulated without reference to the reasoning of well-established State laws, and therefore the label attached to an obligation by a State court is strongly indicative of the nature of that obligation. *See Forsdick v. Turgeon,* 812 F.2d 801, 802–03 (2d Cir.1987); *Pauley v. Spong (In re Spong),* 661 F.2d 6, 9 (2d Cir.1981).

▪ In the instant case, neither the State court nor the parties labeled or otherwise characterized the obligations stipulated to in the Divorce Decree, although the parties did stipulate that they were giving up any mutual claims of support. Nonetheless, the bankruptcy court must look to the nature of the obligation, since a debt may well be in the nature of support under Code § 523(a)(5) even though it does not legally qualify as such under State law. *See Gianakas v. Gia-*nakas, (In re Gianakas), 917 F.2d 759, 762 (3d Cir.1990) (citing *In re Yeates,* 807 F.2d 874, 878 (10th Cir.1986)).

▪ In the absence of any persuasive guidance from the Divorce Decree or the Stipulation as to the nature of the obligations, the Court must determine the intent of the parties at the time they agreed to the terms of the Stipulation in order to find whether the obligations constitute alimony, support or maintenance under Code § 523(a)(5). *See Brody,* 3 F.3d at 38 (citing *Forsdick v. Turgeon,* 812 F.2d 801, 802 (2d Cir.1987)). To assist in this endeavor, courts have examined a number of factors [2], although all evidence, whether direct or circumstantial, is relevant in determining intent of the parties. *See Brody,* 3 F.3d at 38; *see also Benich v. Benich (In re Benich),* 811 F.2d 943, 945–46 (5th Cir.1987) (stating that trial court is entitled to weigh credibility of witnesses, actual situation of parties at time of agreement, and any other evidence which may assist in determining nature of payments). There is no hierarchy of importance among these factors or precise weight assigned to any one of them; instead the factors should be given weight and importance as the facts of the case require. *See Bangert v. McCauley (In re McCauley),* 105 B.R. 315, 319 (E.D.Va.1989). As articulated by the court in *Gianakas,* however, there are three principal factors which may be examined to assist in determining intent: (1) the language and substance of the divorce stipulation in the context of the surrounding circumstances, taking into consideration extrinsic evidence if necessary; (2) the financial circumstances of the parties at the time of the settlement; and (3) the function served by the obligation at the time of the divorce. *Gianakas,* 917 F.2d at 762–63.

In the case *sub judice,* Plaintiff bears the burden of convincing the Court by a preponderance of the evidence that Debtor's assumption of both the second mortgage and certain credit card debts was intended to be in the nature of maintenance or support within the meaning of Code § 523(a)(5). *See*

---

**2.** *See, e.g., Vittorini v. Vittorini (In re Vittorini),* 136 B.R. 632, 635 (Bankr.S.D.N.Y.1992) (examining five factors); *Tsanos v. Bell (In re Bell),* 47 B.R. 284, 287 (Bankr.E.D.N.Y.1985) (examining nine factors).

*Hrim,* 196 B.R. at 241. Accordingly, the Court will address separately the two categories of debt that Plaintiff claims are nondischargeable.

### 1. *Assumption of the Second Mortgage*

■ Initially, the Court must examine the language and substance of the Divorce Decree and Stipulation in the context of the surrounding circumstances to ascertain the intent behind Debtor's assumption of the second mortgage. *See Gianakas,* 917 F.2d at 762. Since a written agreement between the parties is persuasive evidence of intent, an agreement which clearly demonstrates that the parties intended either support or a property settlement will generally control the characterization of the obligation. *See Yeates v. Yeates (In re Yeates),* 807 F.2d 874, 878 (10th Cir.1986). If the agreement is ambiguous, however, the court must look to extrinsic evidence to determine intent. *See id; Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984).

In this case, the Stipulation does not indicate whether the second mortgage assumed by Debtor constituted support or maintenance, or whether it constituted a property settlement, but rather states only that Debtor will "take possession of and become sole owner of the motor home and also become solely responsible for all of the existing debt and will release the plaintiff and hold her harmless from any debt, obligations or other expense associated either with the motor home or with the second mortgage." *See* Stipulation, at 4.

■ Since the Stipulation is not clear as to the nature of the obligation, it is proper to examine extrinsic circumstances. *See Yeates,* 807 F.2d at 879. Consideration of the surrounding circumstances under the first factor of the *Gianakas* test indicates that this obligation was intended to be in the nature of support. According to the Stipulation, Debtor relinquished all right, title and interest in the principal residence in favor of Plaintiff. It is clear then that the parties intended that Plaintiff retain the principal home and raise the children in it, since Plain-

tiff was awarded sole custody of the children. While the second mortgage was obtained for the purpose of purchasing the motor home, which Debtor retained as part of the settlement, it is nonetheless secured not by the motor home, but by the principal residence. Therefore, failure by Debtor to pay this debt would expose Plaintiff to liability on the debt and possibly result in the loss of the principal residence through foreclosure, a result that likely was not intended by the parties. Evidence that payment of an obligation is necessary in order for Plaintiff to maintain the daily necessities, in this case housing, indicates that the obligation assumed by Debtor was in the nature of support. *See Yeates,* 807 F.2d at 879. Furthermore, the presence of minor children in Plaintiff's custody also indicates that the obligation was intended as support. *See Shaver,* 736 F.2d at 1316 (stating that presence of minor children and disparity of incomes is indicative of need for support).

■ In addition to Plaintiff's testimony that she agreed to accept certain payments in lieu of maintenance, a promise to indemnify and hold a party harmless, like that made by Debtor in the Stipulation regarding the second mortgage, can create nondischargeable obligations under Code § 523(a)(5) if they are made in lieu of maintenance and support. *See Horton v. Horton (In re Horton),* 69 B.R. 42, 43 (Bankr.E.D.Mo.1986). Consideration of the intent behind that provision in the Stipulation leads to the conclusion that while Debtor's assumption of this debt allowed him to retain the motor home, it also indirectly supported Plaintiff's and the children's right to continue living in the principal residence, and therefore the nature of the obligation is support. Additional reinforcement for this finding comes from the terms of the Stipulation itself, wherein Debtor agreed that if he were ever to sell the motor home, he must apply the proceeds to the balance of the second mortgage, which would have the effect of protecting Plaintiff's right to retain the home without fear of foreclosure on the second mortgage [3]

---

3. Debtor eventually did sell the motor home and applied the proceeds to the balance of the second

mortgage. The fact that he received less than the value of the second mortgage for the motor

In addition to consideration of the language and substance of the Divorce Decree and Stipulation to ascertain the parties' intent, the Court also must examine the financial circumstances of the parties at the time of the settlement.[4] *See Gianakas*, 917 F.2d at 763. In so doing, a relevant consideration is the relative earning power of the parties. *See Tsanos v. Bell (In re Bell)*, 47 B.R. 284, 287 (Bankr.E.D.N.Y.1985). Although the parties' incomes were characterized as "relatively similar, both earning between $20,000 and $30,000 per year," *see* Stipulation, at 9, an examination of their individual federal tax returns for 1995 indicates that Debtor earned $35,188, while Plaintiff earned $18,432.[5] This represents a significant difference in income, and in light of the fact that Plaintiff had already assumed liability for the first mortgage on the principal residence, it appears to this Court that the intention of the parties was to maintain and support Plaintiff and the children in the residence by paying the second mortgage secured by that residence.

As a further note, the fact that Debtor and Plaintiff mutually waived any claim of maintenance or support is not dispositive as to the classification of an obligation as a property settlement. *See Lincoln v. Phillips (In re Phillips)*, 31 B.R. 398, 400 (Bankr.S.D.Ohio 1983). Based on the length of the marriage, the fact that Plaintiff was awarded custody of the children, and that Plaintiff's income was (and apparently remains) about one-half of Debtor's income, it is likely that at the time of the Stipulation, Plaintiff could not have maintained the principal residence if also expected to carry the burden of the second mortgage, and thus the Court is persuaded that under the second factor of *Gianakas*, the assumption of the second mortgage by Debtor was intended as support. *See Lincoln*, 31 B.R. at 400.

The third factor considered in determining the purpose and intent behind Debtor's assumption of the second mortgage involves the function served by the obligation at the time of the divorce. *Gianakas*, 917 F.2d at 763. As discussed above, an obligation functions as support, for example, where it serves to maintain daily necessities such as food, housing or transportation. *See id; Yeates*, 807 F.2d at 879. It would be transparent to argue that the obligation on the second mortgage was not intended as support or maintenance simply because Debtor himself took possession of and utilized the motor home purchased with the funds from the second mortgage, and that therefore the obligation should be found to be in the nature of a property settlement. Looking beyond such reasoning, it is clear that the effect of Debtor's nonpayment on the second mortgage would not result in a foreclosure on the motor home, but rather on the principal residence occupied by Plaintiff and the children if Plaintiff were unable to pay the debt.[6] The parties were likely aware or made aware of this fact, and it appears to the Court that the intention of the parties at the time the Stipulation was entered into was that this

---

home, thus leaving an outstanding balance on the second mortgage, does not alter the conclusions of the Court regarding the intent of the parties at the time of agreement to the Stipulation.

4. It is improper to examine the parties' present financial conditions to determine whether an obligation is currently necessary for maintenance or support, as such inquiry "would put federal courts in the position of modifying matrimonial decrees of state courts, thus interfering with the delicate state systems for dealing with the dissolutions of marriages.... " *Forsdick v. Turgeon*, 812 F.2d 801, 803–04 (2d Cir.1987); *see also Gianakas*, 917 F.2d at 763 (finding that inquiry of bankruptcy court regarding whether obligation is necessary for support or maintenance should be limited to nature of obligation at time it was undertaken).

5. Most of the evidence presented in this case regarding financial circumstances, primarily in the form of testimony at the adversary trial and their individual tax returns for 1995, concerns and describes the parties' financial circumstances since the settlement. This evidence is nonetheless relevant and informative for purposes of considering their relative financial circumstances at the time of the divorce settlement, since their present circumstances are considerably similar to those at the time they agreed to the settlement.

6. It is unknown by the Court whether the parties' eldest son still does or ever did reside with Plaintiff after the divorce. This fact does not alter the Court's decision herein.

obligation function as an indirect form of support. *See Gianakas,* 917 F.2d at 764 (finding that debtor's spouse could not have maintained family home for herself and children without debtor's payment of second mortgage); *Tunny v. Ploski (In re Ploski),* 44 B.R. 911 (Bankr.D.N.H.1984) (indicating that debtor's assumption of second mortgage constituted support).

Consideration of the foregoing factors leads the Court to conclude that Debtor's obligation to pay the second mortgage was intended to be and is in the nature of support. Therefore, under Code § 523(a)(5), this debt is nondischargeable by Debtor.

### 2. *Credit Card Debts*

▆▆ Plaintiff also argues that Debtor's assumption of three credit card debts should be found to be nondischargeable. Specifically, these debts concern the Discover Card, AAA Visa and Sears credit cards.

Once again utilizing the *Gianakas* test, the Court finds that unlike the second mortgage, assumption of these debts constituted part of a property settlement. There is no indication in the language and substance of the Divorce Decree or Stipulation which indicates that Debtor's assumption of these debts was intended to constitute alimony, support or maintenance. To the contrary, the language of the Stipulation indicates that responsibility for these debts was apportioned between the parties. Debtor assumed the entire balance of the AAA Visa account, but assumed only one-half of the balances on the Sears and Discover Card accounts, with Plaintiff assuming the remainder.

Other settlement language in the Stipulation also supports a finding that the division of responsibility for the credit card debts was intended as a property settlement. For example, Debtor was required to reimburse Plaintiff for her one-half share of monies in a joint bank account owned by them. In addition, the parties agreed to evenly divide the cash value of a life insurance policy, and to split the value of two tax refund checks that were in Plaintiff's possession.

Upon consideration of the financial circumstances of the parties at the time of the divorce, it is not evident that the parties intended assumption of the credit card debts to be for support or maintenance. Although the Court has noted that the relative incomes of the parties are not as equal as reference to the Stipulation would seem to indicate, the parsing out of responsibility for and the amounts of each party's portion of these debts does appear to be thoughtfully calculated to account for the differences in earning power. For example, even though the outstanding balances of the Sears and Discover card accounts were divided between the parties, Debtor took full responsibility for the Caesar's MasterCard and AAA Visa accounts.

Lastly, inquiry into the function served by Debtor's assumption of the credit card debts does not demonstrate that they are in the nature of support of maintenance. There is no evidence that the debts incurred on the credit cards were for the purchase of necessities, nor is there evidence that Debtor's obligation to pay these debts would contribute to the continuing support of Plaintiff. *See Ramsey v. Hiller (In re Hiller),* 44 B.R. 764, 767 (Bankr.N.D.Ohio 1984). Consequently, without any evidence as to the nature of the charges, there is no indication that the function served by Debtor's assumption of these debts is in the nature of support or maintenance within the meaning of Code § 523(a)(5), and thus the debts due on the AAA Visa, Discover, and Sears credit card accounts are not nondischargeable.

### B. *Code § 523(a)(15)*

▆▆ Plaintiff argues in the alternative that the debts assumed by Debtor are nondischargeable under Code § 523(a)(15). This section applies to debts not referred to in Code § 523(a)(5), and since the assumption of the second mortgage has been found to be in the nature of support or maintenance, it cannot also be considered under subsection (a)(15). Therefore the Court need only address Plaintiff's claim that the credit card debts are nondischargeable under subsection (a)(15). Under this subsection, debts arising in connection with a divorce decree or separation which are not of the type described in Code § 523(a)(5) are nondischargeable un-

less: (A) the debtor does not have the ability to pay the debts from income or property not reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor; or (B) discharging the debts would result in a benefit to the debtor that outweighs the detrimental consequences to the former spouse or child of the debtor. *See* 11 U.S.C. § 523(a)(15).

Courts are in disagreement as to which party bears the burden of showing a debtor's inability to pay or a balancing of the equities in their favor. Some courts have held that once a plaintiff demonstrates that a debt arising out of a divorce or separation is not support related, the burden then shifts to the debtor to prove either his inability to pay or a balancing of the equities in his favor, *see, e.g., Collins v. Florez (In re Florez),* 191 B.R. 112 (Bankr.N.D.Ill.1995); *Carroll v. Carroll (In re Carroll),* 187 B.R. 197 (Bankr.S.D.Ohio 1995); *Becker v. Becker (In re Becker),* 185 B.R. 567 (Bankr.W.D.Mo.1995); *Hill v. Hill (In re Hill),* 184 B.R. 750 (Bankr.N.D.Ill. 1995), while other courts have held the plaintiff responsible for this showing. *See, e.g., Greenwalt v. Greenwalt (In re Greenwalt),* 200 B.R. 909 (Bankr.W.D.Wash.1996); *Dressler v. Dressler (In re Dressler),* 194 B.R. 290 (Bankr.D.R.I.1996); *Kessler v. Butler (In re Butler),* 186 B.R. 371 (Bankr.D.Vt.1995). This Court agrees with the reasoning expressed in the *Butler* and *Dressler* decisions and concludes that the burden of proof under Code § 523(a)(15) rests with the plaintiff. This holding is consistent with *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), which indicates that a plaintiff in an action under Code § 523(a) has the burden of proving his or her case by a preponderance of the evidence, *see Greenwalt,* 200 B.R. at 913, as well as being consistent with the policy that exceptions to discharge are to be narrowly construed in favor of the debtor and against the creditor to effectuate the fresh start purposes of the bankruptcy laws. *See Hrim,* 196 B.R. at 241.

To determine a debtor's ability to pay under Code § 523(a)(15)(A), courts have adopted the "disposable income" test of Code § 1325(b)(2). *See Greenwalt,* 200 B.R. at 913; *Dressler,* 194 B.R. at 304; *Florez,* 191 B.R. at 115. Utilizing this test, the Court must determine whether Debtor has the ability to pay the debts after deducting "reasonably necessary" expenses. *See Dressler,* 194 B.R. at 304. Examination of Debtor's voluntary chapter 7 bankruptcy petition makes it clear that after reasonably necessary expenses are deducted, Debtor does not have the ability to pay these debts. In fact, although Debtor did not list rent as an expense when he initially filed for relief, he testified at trial that his current rent is more than five hundred dollars per month. Even though Debtor's child support payment arrearages to his eldest son are expected to cease in April 1997, this still would not free up funds sufficient for Debtor to pay these debts. Therefore the credit card debts are not nondischargeable under Code § 523(a)(15)(A).

Turning now to Code § 523(a)(15)(B) and a balancing of the equities, it is the finding of this Court that in light of Debtor's need for a fresh start, allowing a discharge of these debts results in a benefit to Debtor that outweighs the detrimental consequences to Plaintiff and the children of Plaintiff. The parties are unfortunately in equally lean and difficult financial circumstances. After considering all of the facts and equities of this case, the Court determines that the credit card debts are not nondischargeable under Code § 523(a)(15)(B).

Based on the foregoing, it is

ORDERED that Plaintiff's cause of action seeking a determination that the second mortgage debt assumed by Debtor is nondischargeable pursuant to Code § 523(a)(5) is hereby GRANTED; it is further

ORDERED that Plaintiff's cause of action which seeks a determination that the credit card debts assumed by Debtor are nondischargeable pursuant to Code § 523(a)(5) is hereby DENIED; it is further

ORDERED that Plaintiff's cause of action which seeks a determination that the credit card debts are nondischargeable pursuant to Code § 523(a)(15) is hereby DENIED; and it is further

ORDERED that Plaintiff's cause of action seeking a denial of discharge pursuant to Code § 727 is hereby DENIED.