**In re Jeanna WILLIAMS, Debtor.**

**Daniel Williams, Plaintiff,**

v.

**Jeanna Williams, Defendant.**

**Bankruptcy No. 00–61568.**
**Adversary No. 00–80151A.**

United States Bankruptcy Court,
N.D. New York.

Dec. 28, 2001.

---

Jack Schultz, Syracuse, NY, for plaintiff.

Meggesto, Crossett & Valeriano, William J. Lamitie, of counsel, Syracuse, NY, for defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is an adversary proceeding commenced by the filing of a complaint on July 28, 2000, by Daniel Williams ("Plaintiff"), seeking a determination that a debt owed to him by Jeanna Williams ("Debtor") is nondischargeable pursuant to § 523(a)(15) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code").[1] Pursuant to an Order, dated September 13, 2000, the Debtor was granted an extension to answer the complaint. An answer was served on Plaintiff's counsel on or about October 4, 2000; however, the answer was not filed with the Court. On December 18, 2000, the Debtor filed a motion seeking to extend the time to file her answer. On February 8, 2001, the Court signed an Order granting the extension and requiring that the Debtor serve and file her answer by January 29, 2001. Issue was joined by the filing of an answer on January 29, 2001.

The trial was scheduled to be held on April 25, 2001, and was adjourned on consent first to May 9, 2001, and then to August 2, 2001. The Court heard testimony from both parties. At the close of the Plaintiff's proof, Debtor moved for directed verdict. The Court reserved on the motion and asked that the parties submit memoranda of law in lieu of closing arguments. The matter was submitted for decision on September 10, 2001.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(I).

## FACTS

On or about January 10, 1997, Debtor sued Plaintiff for a divorce. *See* Plaintiff's Exhibit 1. On May 5, 1998, a Mutual Decree of Divorce was signed by the Hon. Thomas J. Murphy, Justice, New York State Supreme Court, Onondaga County. According to the Decree of Divorce, the parties entered into a Stipulation on March 25, 1998. Pursuant to the terms of the Decree/Stipulation, Debtor was awarded sole and exclusive possession of the marital residence at 236 Genesee Park Drive, Syracuse, New York ("Residence"). The Residence was to "continue to be joint property until such time as the youngest child reaches the age of twenty-one (21) years of age." Debtor was required to pay the mortgage, taxes, utilities and insurance on the Residence. She was also to receive credit for the payments, and the Plaintiff was to "maintain his equity in the house as of the time of the divorce." Plaintiff was also required to pay the Debtor $126.00 per week in child support during the school year when the child was residing with the Debtor. During the summer months, the Debtor was to pay the Plaintiff $75.00 per week in child support while the child was residing with the Plaintiff.

Debtor resided in the marital residence subsequent to the divorce from May 1998 until October 31, 1999, a period of 18 months. Debtor testified that she paid the mortgage between May 1998 and April 1999 when she encountered financial difficulties. It was her testimony that she

---

1. Plaintiff's original complaint contained causes of action based on Code § 523(a)(2)(A) and (B), 523(a)(4), 523(a)(5), 523(a)(15) and 727(a)(4)(C). On the day of the trial, Plaintiff agreed to withdraw all but the cause of action based on Code § 523(a)(15).

obtained a loan and upon receipt of the monies sent a check to the mortgagee covering the months of May 1999 to July 1999. She also testified that in August 1999 she made a biweekly payment of $300, which the mortgagee declined to accept. The Debtor testified that she was apprised by the mortgagee that the Plaintiff, as sole mortgagor, had requested that it not accept any payments from the Debtor. According to the Fact Finding and Order of Disposition filed and entered on June 17, 1999, in a proceeding in Family Court of the State of New York, Onondaga County, the Debtor had not made payment on the mortgage and taxes since July 1, 1998. *See* Plaintiff's Exhibit 5.

Plaintiff introduced into evidence a copy of a Notice of Sale which provides that a Judgment of Foreclosure and Sale had been entered on or about August 20, 1999. *See* Plaintiff's Exhibit 7. A letter from mortgagee's counsel, dated November 30, 1999, indicates that arrears on the mortgage totaled $13,433.99, reflecting approximately 18 months of arrearages.[2] *See* Plaintiff's Exhibit 4. Debtor could not account for the amount of arrears and continued to maintain that she had made the payments up until August 1999.

It was Plaintiff's testimony that in order to avert the foreclosure on the Residence, he borrowed $15,000 from his nephew. *See* Plaintiff's Exhibit 6. He also testified that he is now paying the loan back at the rate of $2,000 – $3,000 per year. At the time of the trial, Plaintiff was residing at the Residence with the parties' 14 year old son, Lamar. Debtor was residing in Florida.

Plaintiff testified that he is employed as a meter reader for Niagara Mohawk Power Corporation, earning approximately $40,000 per year, including overtime. Debtor testified that she had been employed by the Department of Defense as a procurement technician for approximately 21 years. She accepted a transfer to Florida in order to retain her employment with the Department of Defense. According to her pay stub, she earns $32,494 per year. *See* Debtor's Exhibit A. Her biweekly gross salary is $1,245.60. *See id.* Her net pay for the week ending February 10, 2001, totaled $505.57. This included a credit for her health insurance of $27.71. Deducted from her salary was $308 that Debtor testified was allocated for payment on her car loan, as well as on a personal loan. Also deducted from her salary on a biweekly basis is $35 to purchase savings bonds in the names of her sons, as well as herself.[3] She also contributes $87.19 per pay period towards her pension.

Debtor filed a voluntary petition pursuant to chapter 7 of the Code on April 3, 2000. In her schedules she identifies $11,500 in mortgage arrears as a debt owed to Plaintiff. She also lists $5,642.15 as an unsecured debt owed to the Plaintiff for attorneys' fees in connection with the foreclosure action brought by the mortgagee. At the trial, Debtor testified that her expenses as listed in her schedules in her Petition are approximately the same although she does have the additional expense of paying for airfare for her son to visit her in Florida at a cost of approximately $900 per year for three trips. Her rent is currently $535 per month. She estimated $350 for gas, maintenance and

---

2. There was testimony that the monthly mortgage payment had been approximately $739. $13,433.99 divided by $739 equals approximately 18.

3. Debtor testified that she cashed some of the savings bonds in order to pay her moving expenses from Syracuse, New York, to Florida. She also used them to pay for the airfare for her son to visit her in Florida.

insurance on her 1995 Volkswagen Jetta. She also pays the Plaintiff $75 per month in child support. According to Schedule J, accompanying her Petition, Debtor estimates $400 per month for food, $178 per month for utilities, $55 for cable TV, $50 for recreation, entertainment, magazines, $100 for clothing and $60 per month for laundry/drycleaning. It was her testimony that she has no extra money left after paying all her monthly expenses.

## DISCUSSION

Code § 523(a)(15) was enacted as part of the Bankruptcy Reform Act of 1994 and made applicable to cases filed after October 22, 1994. Relatively early on in the history of the amendment, this Court rendered a decision in which it held that the burden of proof under Code § 523(a)(15) rests with the plaintiff/creditor. *See In re Frey*, 212 B.R. 728 (Bankr.N.D.N.Y.1996). In so holding, the Court relied on two prior cases, namely, *Kessler v. Butler (In re Butler)*, 186 B.R. 371 (Bankr.D.Vt.1995) and *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290 (Bankr.D.R.I.1996), as well as *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See Frey*, 212 B.R. at 737. That 1996 holding of the Court is clearly now in the minority and this case presents the Court with an opportunity to revisit the issue with the benefit of further analysis by other courts since then. *See, e.g., In re Crosswhite*, 148 F.3d 879 (7th Cir.1998); *Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 226 (5th Cir.1998); *Fellner v. Fellner (In re Fellner)*, 256 B.R. 898, 902–903 (8th Cir. BAP 2001) (citation omitted); *Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 141 (9th Cir. BAP 1997); *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (6th Cir. BAP

1998) (citations omitted); *Simon v. Murrell (In re Murrell)*, 257 B.R. 386, 389 (Bankr.D.Conn.2001); *Foto v. Foto (In re Foto)*, 258 B.R. 567, 572 (Bankr.S.D.N.Y. 2000) (citations omitted).

Code § 523 is labeled "Exceptions to discharge." Code § 523(a)(15) provides an exception to discharge of a debt "not of the kind described in paragraph (5)[4] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record *unless*

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."

11 U.S.C. § 523(a)(15) (emphasis added).

■ Subparts (A) and (B) represent exceptions within the exception of Code § 523(a)(15). *See Crosswhite*, 148 F.3d at 885. Thus, the creditor who seeks to come within the exception of Code § 523(a)(15) has the initial burden of establishing that the debt is not for alimony, support or maintenance but is one incurred in the "course of a divorce or separation or in connection with a separation agreement or divorce decree." *Id.* at 884. Upon such a showing, the debt is excepted from discharge unless the *debtor* is able to establish "either of the two exceptions, subpart (A), the 'ability to pay' test, or (B), the 'detriment' test." *Id.* at 885; *see also Jodoin*, 209 B.R. at 141. The *Jodoin* court

---

4. These include "any debt to a spouse, former spouse or child of the debtor, for alimony to, maintenance for or support of such spouse or child in connection with a separation agreement, divorce decree...." 11 U.S.C. § 523(a)(5).

**454**

noted that such a conclusion is not contrary to the Supreme Court's holding in *Grogan v. Garner.* The court pointed out that the Supreme Court in *Grogan* was silent on the issue of whether the creditor or the debtor had the burden of proof on dischargeability issues. The court in *Grogan* focused simply on the standard to be applied, namely whether proof was to be by clear and convincing evidence or by a preponderance of the evidence. *Id.* at 140.

■ The Court's role is to interpret and apply the law. The Court recognizes that parties appearing before it rely on its prior decisions, unless overruled on appeal, in advocating their positions. As the Court of Appeals for the Seventh Circuit recently noted,

> The most complex relationship is between a court and its own previous decisions. A court must give considerable weight to its decisions unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling. But it is not absolutely bound by them....

*In re Bentz Metal Prods. Co., Inc.*, 231 F.3d 1029, 1033 (7th Cir.2000).

While neither the Second Circuit Court of Appeals nor the U.S. District Court for the Northern District of New York has issued a published decision on the allocation of the burden of proof with respect to a cause of action based on Code § 523(a)(15), this Court feels compelled to alter its prior holding in *Frey.* Based on the cases cited, including decisions by courts of appeal in the Fifth and Seventh circuits and the bankruptcy appellate panels in the Sixth and Ninth circuits, this Court concludes that the burden of proof pursuant to Code § 523(a)(15) rests with the debtor once the creditor has established that the debt is one not for alimony, maintenance or support but is one that

was incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement or divorce decree.

■ Neither party in this proceeding disputes that the debt sought to be held nondischargeable is one which arose in connection with the divorce decree signed by Justice Murphy on May 5, 1998. According to terms of the divorce decree, the Debtor was to pay the mortgage, as well as the taxes, maintenance and insurance on the Residence while she occupied it. She failed to do so as evidenced by the statement of arrears sent to Plaintiff's counsel by the mortgagee and the judgment of foreclosure obtained by the mortgagee. As a result of her breach in the terms of the Stipulation which served as a basis for the provisions set out in the divorce decree, Plaintiff was compelled to obtain a loan to pay the arrears. Accordingly, the debt to the Plaintiff falls within the purview of Code § 523(a)(15).

Neither party alleged that it is in the nature of alimony, maintenance or support. It would appear to be a property settlement. This conclusion is supported by the fact that once their son, Lamar, reaches the age of 21 the parties can "dispose of the house as the parties will agree." *See* Stipulation at 5. Thus, the Court concludes that the Plaintiff has met his burden.

> Congress intended in the first instance that property settlements not be discharged, that debtors shouldn't use bankruptcy to do that; however, they did give the debtors the possibility of discharging the debt but only in certain circumstances. \*\*\* If the debtor can show no ability to pay the debt [pursuant to Code § 523(a)(15)(A)], then I go no further, and the debt can be discharged. If the debtor can afford to pay the debt, then I have to do some kind of balancing [pursuant to Code § 523(a)(15)(B)]

*Fellner,* 256 B.R. at 903 (quoting the bankruptcy court).

■ The question before the Court is whether the Debtor has met her burden of proof. Under the "ability to pay" test contained in Code § 523(a)(15)(A), a court must first determine the amount of disposable income, if any, that the Debtor has available. *See Frey,* 212 B.R. at 737 (citations omitted). This requires the Court to determine whether the Debtor has the ability to pay the debt in question after deducting "reasonable and necessary" expenses. *Id.*

■ In this case, Debtor's counsel determined that it was unnecessary to offer any additional evidence following the close of the Plaintiff's proof, which included testimony by both parties.[5] The Court received into evidence certain exhibits of the Debtor, including a recent pay stub and her 2000 tax return and W–2 forms. *See* Debtor's Exhibits A and B. The Court also agreed to take judicial notice of Schedule J of her Petition, which includes her expenses in March 2000 when she signed her Petition. There was testimony from the Debtor that her expenses had not changed between March 2000 and August 2001 when the trial occurred, with the exception of a decrease in rent, an increase in certain transportation expenses in the form of tolls to and from work, and the expense of having her son travel to visit her in Flori-da. The Debtor's monthly expenses for necessities are as follows:[6]

| | |
|---|---|
| Rent | $ 535 |
| Utilities | 178 |
| Food | 400 |
| Clothing | 100 |
| Laundry/Drycleaning | 60 |
| Transportation (including gas, maintenance, insurance and tolls) | 350 |
| Automobile loan | 235 |
| Child support | 75 |
| Total Month Expenses | $1,933 |

Debtor's monthly income is calculated to be:

| | |
|---|---|
| Net income | $1,038 [7] |
| Loan allocation | 668 [8] |
| Bond purchases | + 76 |
| Total Monthly Income | $1,888 |

Based on these calculations, the Debtor's expenses exceed her income by $45 per month, without even including the personal loan repayment, as noted by this Court at Footnote 8 or the expense she incurs in having her son visit her three times a year, which she estimated to be approximately $900 per year. Accordingly, the Court finds that the Debtor has met her burden of establishing that she has no ability to pay the debt in the reasonable future given her current circumstances and based on her current income and expenses. The Plaintiff offered no testimony to contradict Debtor's testimony or the exhibits received in evidence. There was no testimony that she had remarried or was sharing household expenses with an-

5. Given this Court's prior holding in *Frey* placing the entire burden of proof on the creditor, this approach is understandable. As will be discussed below, the Court finds that reversing its position and placing the ultimate burden of proving subparts (A) or (B) on the Debtor in no way prejudices her under the facts of this case.

6. For purposes of this discussion, the Court will not include expenses of $55 for cable or $50 for recreation as being "necessary." As payment for health and life insurance are deducted from the Debtor's gross salary, they are not listed as expenses.

7. Calculated on a monthly basis by multiplying $478.57 ($505.57 net salary—$27 one time credit for health insurance) per pay period times 2.17 pay periods per month.

8. The Court includes the entire deduction for loan repayment as additional income because the automobile loan payment is already calculated in Debtor's expenses. The Court has opted not to include payment on the personal loan as a "necessary" expense because there was no testimony offered as to the purpose of the loan and when it will be fully paid.

**456**

other individual or that her income was likely to increase to any significant degree over the next few years. The Court also notes that in approximately seven years when Lamar reaches the age of 21, the parties will have the opportunity to return to state court should they wish in connection with the disposition of the Residence. It will be up to the state court to determine the equities of any disposition/allocation of that particular asset. The Court concludes that the debt is dischargeable pursuant to Code § 523(a)(15)(A) and need not do any balancing pursuant to Code § 523(a)(15)(B).

Based on the foregoing, it is hereby

ORDERED that Debtor's motion for a directed verdict is granted; and it finally

ORDERED that Plaintiff's complaint seeking a determination that the debt arising from Plaintiff's payment of the mortgage arrears is nondischargeable is dismissed.