**In the Matter of Marilynn Nicole BUTLER, Debtor.**

**Jason Robert Butler, Plaintiff,**

**v.**

**Marilynn Nicole Butler, Defendant.**

**Bankruptcy No. 00–31386 RFH.**
**Adversary No. 01–3005.**

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

Jan. 7, 2002.

Kerry S. Doolittle, Watkinsville, GA, for Plaintiff.

Clark E. Gulley, Colbert, GA, for Defendant.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Jason Robert Butler, Plaintiff, filed on February 1, 2001, a complaint to determine the dischargeability of certain debts. Marilynn Nichole Butler, Defendant, filed a response on March 1, 2001. A trial was held on August 16, 2001. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

## FINDINGS OF FACT

Plaintiff and Defendant were married on September 14, 1996. Plaintiff and Defendant have two children who are now four and eight years old. Plaintiff paid the marital obligations during the marriage. Defendant was not employed.

Plaintiff and Defendant had marital problems and separated. Defendant obtained a protective order, which gave her exclusive possession of the marital residence. Plaintiff moved into his mother's residence. Defendant later moved into her sister's residence.

The state court entered on February 24, 2000, a Temporary Order that gave Plaintiff temporary custody of his children. Defendant received temporary possession of a Mazda automobile and was responsible for the monthly payments.[1] Defendant was ordered to pay temporary child support of $50 per week. Defendant was ordered to pay $50 per month to Plaintiff

for obligations incurred at the marital residence when Defendant had exclusive possession.

Plaintiff and Defendant signed a settlement agreement dated April 26, 2000. The settlement agreement was incorporated into the final divorce decree, which was entered on May 9, 2000. Plaintiff was represented by counsel. The Court is persuaded that Defendant was not represented by counsel. The divorce decree provides that Plaintiff would have custody of their children. Defendant was ordered to pay child support of $50 per week. The state court based Defendant's child support obligation on a "minimum wage income" of $206 per week for Defendant.[2] The divorce decree shows Plaintiff's gross monthly income as $4,257.67.

Defendant received possession of the Mazda automobile. Defendant was responsible for the monthly payments of $130.42. Plaintiff was to make the monthly payments on certain credit card obligations. Defendant was to reimburse Plaintiff for one-half of the payments. Defendant was to pay $165 to reimburse Plaintiff for a certain purchase that Defendant had made on Plaintiff's Citibank credit card.[3]

Plaintiff and Defendant had been tenants in a residence owned by the McKinneys. The carpet in the residence was damaged. Defendant was required to reimburse Plaintiff for one-half of any payments that Plaintiff made to the McKinneys. The McKinneys later obtained a judgment against Plaintiff. Plaintiff paid the McKinneys $2,107 to satisfy the judgment.

---

1. Plaintiff was the sole obligor on the Mazda debt.

2. Defendant was not employed at the time of the divorce.

3. Plaintiff testified that this charge was removed from his credit card bill. The Court is persuaded that Defendant's obligation to reimburse Plaintiff for this credit card charge is moot.

Paragraph 9 of the separation agreement provides as follows:

9.

*BANKRUPTCY.* In the event either party should at some future time file for bankruptcy, each agrees not to attempt to discharge any obligation for which the other party would be obligated, including obligations to one another outlined in this Agreement, and each specifically agrees to except any such obligations from discharge, and further agrees to waive any defenses either may have to claims of the other that said obligations are not subject to discharge in the bankruptcy courts.

Defendant made only one payment of $130 on her obligations under the divorce decree. Plaintiff filed a motion for contempt in state court. The state court entered an order on September 15, 2000, finding Defendant to be in willful contempt by failing to pay her obligations under the Temporary Order of February 24, 2000, and the divorce decree of May 9, 2000. The state court ordered Defendant to pay attorney's fees of $500 to Plaintiff's attorney. Plaintiff testified that he has paid his attorney for her services. Defendant has not reimbursed Plaintiff.

The state court entered an order on September 28, 2000, again finding Defendant to be in willful contempt by failing to pay her obligations to Plaintiff. The state court entered an order on October 24, 2000, ordering Defendant to be incarcerated until she paid Plaintiff the sum of $5,393.77.

Defendant was incarcerated. Defendant filed a petition under Chapter 7 of the Bankruptcy Code on November 7, 2000. The state court entered an order on November 7, 2000, releasing Defendant from incarceration. Defendant's sister paid Plaintiff some $2,000, which brought current Defendant's child support obligation. Defendant has made no payments to Plaintiff since Defendant filed for bankruptcy relief.

Plaintiff testified that Defendant has failed to reimburse him the following amounts as required by the temporary order, the divorce decree, or the contempt order:

| | |
|---|---|
| Car Payments on Defendant's Mazda | $1,390.98 |
| Credit Cards (½) | 6,392.74 |
| McKinney Judgment (½) | 1,053.50 |
| Attorney Fees | 500.00 |
| $50 per month for debts incurred at former marital residence | Amount Unknown |

Plaintiff works for United Parcel Service. His current weekly take-home pay is $725 to $800. Plaintiff and his children live with Plaintiff's mother. Plaintiff helps with the household expenses, but does not pay rent. Plaintiff uses his mother's car for transportation. Plaintiff has worked hard to satisfy the marital obligations. Plaintiff made the final monthly payment of $130 on Defendant's Mazda in December of 2000. Plaintiff has satisfied all the marital obligations except for a debt owed to Regions Bank of about $2,000. Plaintiff will satisfy this obligation in about six months. Thus, Plaintiff's financial position has improved because of his commitment to satisfy the marital obligations.

Defendant has remarried. Defendant's husband, Billy Raymond Stanridge, has been unemployed for about three months. Defendant testified that she and her husband do not have a permanent residence. Defendant and her husband currently live

with Mr. Stanridge's aunt. The aunt pays the rent and the utilities. Defendant and her husband help by cleaning the aunt's residence and the yard. Defendant and her husband lived with his parents prior to moving in with Mr. Stanridge's aunt. Neither Defendant nor her husband receive unemployment or public assistance benefits. Defendant's application for disability benefits was denied last year. Defendant may suffer from a mental illness known as bipolar disorder.

Defendant did not complete high school and does not have a GED. Defendant was not employed during her marriage to Plaintiff. Defendant's employment skills are very limited. Defendant has some limited experience in hanging wallpaper, as a cashier, and as a plumber's assistant. Defendant suffered a broken hip and has back problems that limit her ability to work. Defendant received treatment for her back problems from 1995 until 1999. Defendant's last employment was as a part-time cashier at Winn Dixie in February of 2001. Defendant has completed three or four job applications since February of 2001. Defendant's Mazda automobile is in poor condition.

### CONCLUSIONS OF LAW

Plaintiff contends that Defendant's obligations under the divorce decree are nondischargeable in bankruptcy. The obligations at issue are as follows:

(1) Defendant's obligation to make the monthly payments on her Mazda automobile. Plaintiff was called upon to make the payments. ($1,390.98)

(2) Defendant's obligation to reimburse Plaintiff for one-half of the credit card payments. ($6,392.74)

(3) Defendant's obligation to reimburse Plaintiff for one-half of the McKinney judgment. ($1,053.50)

(4) Attorney's fees awarded for Defendant's willful contempt. ($500)

(5) Defendant's obligation to pay $50 per month for debts incurred at the former marital residence.

(6) Defendant's obligation to pay child support of $50 per week.[4]

Plaintiff contends that Defendant's obligations are nondischargeable under section 523(a)(2)(A), (5)(B), and (15) of the Bankruptcy Code.[5] This section provides as follows:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . .

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement, but not to the extent that—

. . . .

---

4. Defendant concedes that her obligation to pay child support is nondischargeable.

5. 11 U.S.C.A. § 523(a)(2)(A), (5)(B), (15) (West 1993 & Supp.2001).

**(B)** such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

. . . .

**(15)** not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

**(A)** the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

**(B)** discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C.A. § 523(a)(2)(A), (5)(B), (15) (West 1993 & Supp.2001).

■ Plaintiff has the burden of proving all facts essential to support his objection to dischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ "The validity of a creditor's claim [against a bankrupt debtor] is determined by rules of state law. Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner,* 111 S.Ct. at 657–58.

First, Plaintiff contends that Defendant's obligations are nondischargeable under section 523(a)(2)(A).

■ "For purposes of § 523(a)(2)(A) [of the Bankruptcy Code], a creditor must prove that (1) the debtor made a false representation with intent to deceive the creditor, (2) the creditor relied on the representation, (3) that his reliance was [justifiable], and (4) that the creditor sustained loss as a result of the representation." *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 676 (11th Cir.1993); *see Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (justifiable reliance required under section 523(a)(2)(A)).

■ "In order to preclude the discharge of a particular debt because of a debtor's false representation, ... [t]he debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986).

In *Sears Roebuck & Co. v. Faulk (In re Faulk),*[6] the bankruptcy court stated:

"Actual" fraud precluding discharge consists of any deceit, artifice, trick or design, involving the direct and active operations of the mind used to circumvent or cheat another; something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. However, fraud may consist of silence, concealment or intentional non-disclosure of a material fact, as well as affirmative misrepresentation of a material fact.

---

6. 69 B.R. 743 (Bankr.N.D.Ind.1986).

A "false pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation.

69 B.R. at 750.

*See also* 4 *Collier on Bankruptcy* ¶ 523.08[1][d], [e] (15th ed. rev.2001).

■ "Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of a case." *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985).

Plaintiff contends that Defendant did not intend to meet her obligations under the divorce decree. Plaintiff relies upon *Lumpkin v. Lumpkin*, 173 Ga.App. 755, 328 S.E.2d 389 (1985), in which the Georgia Court of Appeals stated:

Although the evidence in this case would have authorized the trial court to find that the appellant's failure to pay resulted from lack of funds rather than wilfulness, there was at least some evidence from which the trial court could reasonably have found to the contrary. There is no indication that the appellant's financial condition was any worse at the time of the hearing than it was in January of 1984, when he voluntarily agreed not only to make the "property settlement" payments he had previously been ordered to make but also to pay an additional $200 per month on the arrearage. Since that time, though he has scrupulously met his $200 per month child-support obligation, he has paid nothing whatsoever on the "property settlement" obligation but has instead sought to be discharged from that obligation in bankruptcy. It may reasonably be concluded from this sequence of events that at the time the Alabama

consent order was issued, the appellant had no actual intention of complying either with it or the divorce decree. Accordingly, we cannot say that the court abused its discretion in finding the appellant to be in wilful contempt of the domesticated decree.

328 S.E.2d at 391.

■ Turning to the case at bar, the Court is not persuaded that Defendant did not intend to meet her obligations under the divorce decree. The Court is not persuaded that Plaintiff's reliance was justifiable that Defendant would be able to meet her obligations. Plaintiff knew that Defendant had not completed high school and did not have a GED. Plaintiff knew that Defendant's employment skills were very limited. Plaintiff knew that Defendant had not worked during their marriage. Plaintiff knew that Defendant suffered from back problems because Defendant had received treatment during their marriage. Plaintiff knew that Defendant may be suffering from a mental illness known as bipolar disorder. The evidence fails to show that Defendant had any significant employment after the divorce decree was entered. The Court is persuaded that Plaintiff knew that Defendant probably would not be able to meet her obligations under the divorce decree. The Court also notes that Defendant was not represented by counsel. The Court is persuaded that Defendant simply did not have the financial ability to meet her obligations. Defendant and her husband do not have a permanent residence and are dependent upon relatives.

■ Plaintiff also argues that Defendant, under paragraph nine of the separation agreement, agreed not to attempt to discharge in bankruptcy her obligations. Plaintiff argues that Defendant had no intention of honoring her obligations.

Prepetition prohibitions against the filing for bankruptcy relief generally are unenforceable. *In re Shady Grove Tech Center Associates Limited Partnership*, 216 B.R. 386, 390 (Bankr.D.Md.1998); *In re Citadel Properties, Inc.*, 86 B.R. 275 (Bankr.D.Fla.1988).

The facts show that Defendant simply has never had the financial ability to meet her obligations. The Court is persuaded that Plaintiff knew that Defendant probably would not be able to meet her obligations. The Court notes that Defendant was not represented by counsel. The Court is persuaded that Defendant did not understand paragraph nine of the separation agreement. The Court is persuaded that Defendant's obligations are not nondischargeable under section 523(a)(2)(A).

■ Plaintiff also contends that Defendant's obligations are nondischargeable under section 523(a)(5)(B).

In *Cummings v. Cummings*,[7] the Eleventh Circuit Court of Appeals stated, in part, as follows:

Pursuant to § 523(a)(5), "a given domestic obligation is not dischargeable if it is 'actually in the nature of' alimony, maintenance, or support." *In re Harrell*, 754 F.2d 902, 904 (11th Cir.1985). Whether a given debt is in the nature of support is an issue of federal law. *In re Strickland*, 90 F.3d 444, 446 (11th Cir. 1996). Although federal law controls, state law does "provide guidance in determining whether the obligation should be considered 'support' under § 523(a)(5)." *Id.* To make this determination a bankruptcy court should undertake "a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support." *In re Harrell*, 754 F.2d at 906.

In conducting this inquiry, a court cannot rely solely on the label used by the parties. As other courts have recognized, "it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose." *In re Gianakas*, 917 F.2d 759, 762 (3d Cir.1990) (citation omitted). The court must therefore look beyond the label to examine whether the debt actually is in the nature of support or alimony. *Id.* A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony. *See In re Brody*, 3 F.3d 35, 38 (2d Cir.1993); *In re Sampson*, 997 F.2d 717, 723–24 (10th Cir.1993); *In re Davidson*, 947 F.2d 1294, 1296–97 (5th Cir.1991); *In re Gianakas*, 917 F.2d at 762; *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984); *Williams v. Williams*, 703 F.2d 1055, 1057–58 (8th Cir.1983). Thus, "the party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support...." *In re Sampson*, 997 F.2d at 723.

. . . .

[T]he touchstone for dischargeability under § 523(a)(5) is the intent of the parties. *See In re Sampson*, 997 F.2d at 723. In determining whether a particular obligation is in the nature of support, "[a]ll evidence, direct or circumstantial, which tends to illuminate the parties subjective intent is relevant." *In re Brody*, 3 F.3d at 38.

244 F.3d at 1265–66.

The state court entered on February 24, 2000, a temporary order which required, in

7.  244 F.3d 1263 (11th Cir.2001).

part, that Defendant pay $50 per month to Plaintiff for obligations incurred at the marital residence when Defendant had exclusive possession.[8] The settlement agreement dated April 26, 2000, required that Defendant make payments on her Mazda automobile. The settlement agreement also required Defendant to reimburse Plaintiff for one-half of the payments that Plaintiff made on certain credit card obligations and on the McKinney judgment. Plaintiff was the obligor on these obligations. Plaintiff has satisfied all marital obligations, except for $2000 owed to Regions Bank. The state court ordered Defendant to pay $500 to Plaintiff's attorney after Defendant failed to meet her obligations.

In *Gilbert v. Gilbert (In re Gilbert)*,[9] this Court stated:

"[J]oint [marital] obligations assumed by the debtor as a part of a separation or divorce settlement must be 'actually in the nature of' alimony or support in order to be excepted from discharge." *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983). *See also Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 199 (Bankr.6th Cir.1998).

"The determinative issue is generally whether or not the parties intended the assumption of the debts to be in lieu of alimony or support payments or rather just a means of dividing property upon divorce." *Rooker v. Cooley (In re Rooker)*, Ch. 7 Case No. 85–30375, Adv. No. 86–3001 (Bankr.M.D.Ga. July 7, 1986). *See also Frey v. Frey (In re Frey)*, 212 B.R. 728, 736 (Bankr.N.D.N.Y.1996) (assumption of credit card debt was a dischargeable property settlement); *Smith v. Edwards (In re Smith)*, 207 B.R. 289, 291–92 (Bankr.M.D.Fla.1997) (assumption of credit card debt was not in the nature of support); *Rooker v. Rooker (In re Rooker)*, 116 B.R. 415, 417 (Bankr.M.D.Pa.1990) (obligation in a divorce decree that divides the marital debt is dischargeable).

Plaintiff relies upon several state court cases that hold that a property settlement is not dischargeable in bankruptcy if the purpose of the property settlement was to provide the former spouse with maintenance or support. *Manuel v. Manuel*, 239 Ga. 685, 238 S.E.2d 328 (1977); *Collins v. Collins*, 208 Ga.App. 862, 432 S.E.2d 605 (1993). *See also Ward v. Ward*, 261 Ga. 659, 409 S.E.2d 518 (1991), *cert. denied*, 503 U.S. 947, 112 S.Ct. 1503, 117 L.Ed.2d 642 (1992); *Lewis v. Lewis*, 258 Ga. 617, 373 S.E.2d 18 (1988).

Turning to the case at bar, at the time of their divorce, Plaintiff's gross monthly income was $4,257.67. Defendant was unemployed. Defendant had very limited employment skills and education. The Court is persuaded that Plaintiff knew that Defendant probably would be unable to meet her financial obligations. The Court is persuaded that Defendant was not financially able to pay maintenance or support. The Court is persuaded that Plaintiff and Defendant simply were dividing the marital obligations rather than providing maintenance or support. The Court is persuaded that Defendant's obligations are not in the nature of alimony, maintenance, or support as that term is used in section 523(a)(5)(B).

---

8. This requirement was not incorporated into the subsequent settlement agreement and the final divorce decree. The Court questions, but need not decide, whether Defendant continued to be obligated for this debt.

9. Ch. 7 Case No. 99–52633, Adv. No. 99–5129, 2000 WL 33740251 (Bankr.M.D.Ga. Mar. 30, 2000).

Finally, Plaintiff contends that Defendant's obligations are nondischargeable under section 523(a)(15).

In *Whitehead v. Whitehead (In re Whitehead)*,[10] this Court stated:

> Simply stated, section 523(a)(15) provides that certain otherwise dischargeable debts incurred in the course of a divorce or separation are nondischargeable unless the debtor does not have the ability to pay the debts or unless discharging the debts would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor.
>
> Most courts hold that a former spouse must prove that the debts were incurred in connection with a divorce or separation. The burden then shifts to the debtor to prove that the debtor does not have the ability to pay the debts or that discharging the debts would result in a benefit to the debtor that outweighs the detrimental consequences to the former spouse....
>
> Most courts hold that the financial circumstances of a debtor's new spouse or live-in companion should be considered....
>
> ....

In *In re Konick*, the Bankruptcy Appellate Panel for the First Circuit stated:

> A view of the case law shows that courts uniformly take into account the debtor's current financial condition, i.e., at the time of trial, when determining whether a claim should be discharged under § 523(a)(15). *See, e.g., Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 142 (9th Cir. BAP 1997); *In re Brasslett*, 233 B.R. [177] at 183

> [(Bankr.D.Me.1999)]; *In re Dressler*, 194 B.R. at 300–01; *Gantz v. Gantz (In re Gantz)*, 192 B.R. 932, 934–35 (Bankr.N.D.Ill.1996); *In re Hesson*, 190 B.R. [229] at 238 [(Bankr.D.Md. 1995)]. In addition, courts may consider the debtor's future earning capabilities and long-term financial prospects, particularly where the claim is to be paid incrementally over a period of time. *See, e.g., Wolfe v. McCartin (In re McCartin)*, 204 B.R. 647, 654 (Bankr.D.Mass.1996)[;] *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303–04 (Bankr.E.D.Ark.1996); *In re Straub*, 192 B.R. at 528. "A court may look to a debtor's prior employment, future employment opportunities, and health status to determine the future earning potential of the Debtor." *In re Brasslett*, 233 B.R. at 184 (*quoting Hart v. Molino (In re Molino)*, 225 B.R. 904, 908 (6th Cir. BAP 1998)).

[*In re Konick,*] 236 B.R. [524] at 529 [(1st Cir. BAP 1999)].

*See also Findley v. Findley (In re Findley)*, 245 B.R. 526, 532 (Bankr. N.D.Ohio 2000) ("each party's projected income should be measured by his or her realistic earning potential, not by lifestyle or other choices which restrict income"); *Migneault v. Migneault*, 243 B.R. 585, 589 (D.N.H.1999) (debtor's earning capacity should be considered in evaluating ability to pay); *In re Smither*, 194 B.R. [102] at 107–08 [(Bankr. W.D.Ky.1996)] (court should consider present income and future earning potential); *In re Huddelston*, 194 B.R. [681] at 687–88 [(Bankr.N.D.Ga.1996)] (prospect for change must be considered); *Straub v. Straub (In re Straub)*,

---

10. Ch. 7 Case No. 99–52131, Adv. No. 99–5114, 2000 WL 33740254 (Bankr.M.D. Ga. June 1, 2000).

192 B.R. 522, 528–29 (Bankr.D.N.D. 1996) (future ability to pay debt should be considered); *see generally In re Crosswhite*, 148 F.3d [879] at 889 [(7th Cir.1998)] (court should consider totality of circumstances when balancing the equities under section 523(a)(15)(B)); *In re Gamble*, 143 F.3d [223] at 226 [(5th Cir. 1998)] (totality of circumstances applies under section 523(a)(15)(B)).

Turning to the case at bar, the Court is not persuaded that Defendant has the ability to pay the obligations at issue. Defendant has been unemployed since February of 2001. Defendant suffers from health problems that limit her employment opportunities. Defendant has limited employment skills and education. Defendant's husband is unemployed. Defendant and her husband are dependent on relatives for assistance. Defendant has no monthly income. If Defendant fails to pay her nondischargeable child support obligations, she again faces incarceration.

The Court also is persuaded that discharging the obligations at issue would result in a benefit to Defendant that outweighs the detrimental consequences to Plaintiff. Defendant has no monthly income and very limited employment prospects. Defendant faces incarceration if she does not pay her nondischargeable child support obligations.

Plaintiff's current weekly take-home pay is $725 to $800. Plaintiff's monthly expenses will decrease in six months when he satisfies the sole remaining marital debt. Plaintiff is to be commended for working hard to satisfy the marital debts. Still, the Court must conclude that Defendant's obligations are dischargeable under section 523(a)(15).

1. The pleadings have not been amended to reflect the correct spelling and name of this

An order in accordance with this memorandum opinion will be entered this date.