**In re Gerald Edward DURRANCE, Debtor.**

**Nancy Gayle Horne Durrance Harness, Plaintiff,**

v.

**Gerald Edward Durrance, Defendant.**

**Bankruptcy No. 04–51149–JDW. Adversary No. 04–5094.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

May 27, 2005.

Gene F. Cantrell, Lawrenceville, GA, for Plaintiff.

Robert Fricks, Macon, GA, for Debtor–Defendant.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Plaintiff's complaint to determine dischargeability of debts. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor Gerald Durrance and Plaintiff Nancy Harness were married on April 15, 1995. While they were married, they had three children, now ages 9, 7, and 5. Debtor owned a framing business and Plaintiff kept the books for the company.

In June 2000, Debtor went to prison, and his business ceased to operate. While Debtor was in prison, Plaintiff took steps to support herself and the children, including selling a tractor for $9,000 and working various odd jobs. Plaintiff's mother contributed to their support by selling her house and using the equity to open a check cashing business with Plaintiff. Also during this time, the Internal Revenue Service ("IRS") seized two of Plaintiff's income tax refunds to pay past due taxes for which she and Debtor were jointly liable.

Debtor was released from prison in December 2001. On February 1, 2002, Plaintiff moved out of the marital home. On March 20, 2002, she filed a divorce petition. The judge in the divorce case entered an interlocutory order on April 25, 2002, which provided in part for the sale of the marital residence. It also provided that the parties would be jointly responsible for the expenses of maintaining the residence, including mortgage, insurance, and utilities, until sold. Once sold, the proceeds were to be evenly split three ways among Debtor, Plaintiff, and their children. The order also provided that Plaintiff was entitled to possession of the residence from April 29, 2002, until the property was sold.

Plaintiff was unable to take possession of the residence until late August or early September 2002, because it was occupied by Debtor's mother and his three nephews.

Debtor also resided at the house during some portion of the four-month period. Debtor and his relatives incurred $453 in utility charges during that period on an account in Plaintiff's name. Even though Plaintiff was not in possession of the home, she paid $750 each month as her share of the mortgage. A balloon payment came due on the mortgage on October 1, 2002. The parties were unable to make the payment, and the house was sold in a foreclosure proceeding. The Court has no credible evidence as to the value of the house, the amount of the mortgage, or the foreclosure price.

The state court entered a final order in the divorce proceeding on October 17, 2002, nunc pro tunc to September 24, 2002. The final decree made the following provisions: (1) Debtor is required to pay Plaintiff $225 per week as support for their three minor children; (2) Debtor is required to pay all the children's medical expenses; (3) Debtor is awarded a 1970 Jeep vehicle; (4) Plaintiff is awarded a 1962 GMC dump truck; (5) Debtor is required to reimburse Plaintiff $2,934 for income tax payments made by her and to pay other tax liabilities incurred during the marriage; (6) Debtor is required to reimburse Plaintiff $3,000 for certain mortgage payments she made on the marital residence during the time she was supposed to have possession of the residence but did not; (7) Debtor is required to reimburse Plaintiff $453 for a utility bill; and (8) Debtor is required to reimburse Plaintiff $750 for attorney fees and expenses in the divorce case. The order provided for reimbursements to be paid at a rate of $200 per week.

The only items in dispute in this case are taxes of $2,934, taxes of $623, the

mortgage payments of $3,000, and the utility bill of $453. The parties agree that Debtor is current on his child support obligations and that those obligations are nondischargeable.

Debtor filed a Chapter 7 petition on March 16, 2004. Currently, his income is $3,000 per month. He testified that his expenses have decreased somewhat since filing his Schedule J. Currently, his approximate monthly expenses are as follows: $500 for housing; $975 for child support ($225 per week); $300–$320 for utilities; $350–400 for a Bobcat tractor, $200 for food; $300 for Nextel phone service for his business; $350–400 for auto insurance, $24–50 for water. In addition, he stated that he owes the IRS $9,600, which includes pre– and post-divorce tax liability. According to his Schedule J, his monthly tax expense is $100. Based on these figures, Debtor's minimum total monthly expenses are $3,099. Absent the monthly tax payment,[1] the expenses are $2,999. The Court has no evidence as to Plaintiff's income and expenses, although she has remarried and operates a tile-laying business with her husband.

Plaintiff filed a complaint to determine the dischargeability of Debtor's obligations under the divorce decree on June 17, 2004. Debtor filed a counterclaim for the fees incurred in the defense of the case pursuant to Rule 11, on the ground that Plaintiff's case is frivolous. The Court held a trial on March 30, 2005. At the close of Plaintiff's evidence, the Court found that her case was not frivolous and granted a directed verdict denying Debtor's claim for attorney fees. The Court took the issue of dischargeability under advisement and, for the following reasons, concludes that the

---

1. Although Debtor testified about having a $9,600 tax liability, he never made any connection between that liability and the $100 tax expense listed in his schedules. It is unclear to the Court what taxes the $100 monthly expense represents.

debts are dischargeable in part and non-dischargeable in part.

## Conclusions of Law

In deciding whether divorce obligations are dischargeable, the Court must look to two provisions of the Bankruptcy Code. Under 11 U.S.C. § 523(a)(5), obligations "in the nature of alimony, maintenance, or support" are always nondischargeable. Thus, if the debts at issue are support obligations, the Court need look no further. If not, § 523(a)(15) provides that non-support divorce obligations (commonly referred to as property division or property settlement) may be dischargeable in limited circumstances—if the debtor is unable to pay them or if the benefit of discharge to the debtor outweighs the detriment to the spouse.[2]

■■■ The first question is whether the obligations in dispute are "in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B). This is a question of federal law, although state law may provide guidance. *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir.2001).

In making its determination, the Court must look beyond labels used by the parties, and instead decide whether "at the time of its creation the parties intended the obligation to function as support or alimony." *Id.* The burden is on Plaintiff to prove that the debts at issue are in the nature of support. *Id.* In this case, other than the two divorce orders, there is virtually no evidence of the intent of the parties. The testimony of the parties was generally so self-serving and contradictory that it does not supply credible evidence of intent.

### Mortgage Payments

■■■ With respect to the mortgage payments, the divorce court ordered Debtor to pay half the mortgage while Plaintiff and the children occupied the marital residence, to put the house up for sale, and to divide the proceeds three ways among Debtor, Plaintiff, and the children. The fact that the children are included in this formula shows some intent that the mort-

---

**2.** Section 523(a) provides in relevant part as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—. . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance or support,

unless such liability is actually in the nature of alimony, maintenance, or support; . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.] 11 U.S.C.A. § 523(a)(5), (15) (West 2004).

gage payments were to serve as more than mere property division.

Debtor argues that the case *Clark v. Golloway (In re Golloway)*, No. 03–13160, Adv. No. 04–1706, 2005 Bankr.LEXIS 296 (Bankr.N.D.Ga. January 19, 2005) is applicable. In *Golloway*, the divorce decree provided that the wife and children were to have exclusive possession of the marital residence until it could be sold. Once sold, the proceeds would be divided equally between the former spouses. Until the house sold, the debtor was obligated to pay the full mortgage payment of $957 each month. The amount of that payment would be credited toward his monthly child support obligation of $925. *Id.* at *2–4. The bankruptcy court found that the mortgage payment was not in the nature of support because the debtor could not avoid the mortgage obligation by paying the child support directly to his ex-wife. *Id.* at *9. This shows that the purpose of the child support credit was "to keep the mortgage current until the house could be sold and the proceeds divided equally." *Id.* In addition, the fact that the house was to be sold rather than retained as a home for the children is evidence that the mortgage payment was property division rather than support. *Id.* at *10.

The Court does not entirely agree with the conclusion in *Golloway*. To the extent the debtor satisfied his support obligation by paying the mortgage, the mortgage payment was apparently intended as a substitute for support. Even if the Court agreed with *Golloway*, a critical distinction is that the proceeds of the sale of the house were to be split between the ex-spouses. Unlike this case, the children in *Golloway* received no financial benefit from the sale.

Debtor has also cited this Court's decision in *Cirilli v. Cirilli (In re Cirilli)*, 278 B.R. 245 (Bankr.M.D.Ga.2001) (Walker, J.). In that case, a jury in the divorce proceedings ordered the debtor to pay 70 percent of the mortgage payment on the house in which his ex-wife and children lived for 9 years. *Id.* at 248. Because the 9–year period coincided with the year the youngest child would reach her majority, the Court found the mortgage payment to be in the nature of support. *Id.* at 250. The fact that distinguishes *Cirilli* from both this case and *Golloway* is that the debtor had to continue making the mortgage payment for the duration on the children's youth. However, such a condition is not the sole factor in deciding whether a mortgage obligation is in the nature of support.

By providing that Debtor pay half the mortgage while his children lived in the house and providing that the children were entitled to a share of the proceeds from the sale of the house, the parties intended the mortgage payment to serve as support. Plaintiff paid her share of the mortgage, but she and the children were denied possession of the house. By requiring Debtor to reimburse Plaintiff, the Court is persuaded that the divorce court intended to compensate her for the support the children were denied. Thus, the $3,000 mortgage reimbursement is in the nature of support and is nondischargeable under § 523(a)(5).

### Utility Bill

■ The utility bill was incurred by Debtor and his family and charged to an account in Plaintiff's name. Payment of utilities was a joint obligation under the interlocutory separation order. That provision worked in concert with the requirement that Plaintiff and the children take possession of the residence. Thus, they would be the ones to benefit from the utility service. Instead, Debtor enjoyed the utilities to the exclusion of Plaintiff and the children, essentially substituting him-

self as the beneficiary of a necessity he had been ordered to provide. The Court is persuaded that full reimbursement of the utility bill was intended to compensate Plaintiff for loss of support. Thus, it is nondischargeable under § 523(a)(5).

*Taxes*

■ The parties concede that they were jointly liable for the taxes at issue. The IRS satisfied the obligation by seizing all or a portion of Plaintiff's tax refund. Debtor has been ordered to reimburse her in full. Unlike the mortgage and utility payments, the tax liability is not directly related to the support of the children or Plaintiff. It is not an obligation that naturally arose out of the need to provide them with certain necessities. *See Robinson v. Robinson (In re Robinson)*, 193 B.R. 367, 377 (Bankr.N.D.Ga.1996). The fact that Debtor was required to reimburse Plaintiff for the payments does not indicate otherwise. Thus, it is not in the nature of support under § 523(a)(5).

While it is true that the payment of the taxes diminished Plaintiff's ability to support the children, the same would be true for any obligation she incurs and pays. To presume that Plaintiff's payment of this joint tax liability was actually Debtor's liability would exceed the scope of the evidence. While it happens that Plaintiff may become liable for taxes incurred without her knowledge, it is likewise possible that she enjoyed with Debtor the benefit of the taxable income. There is no evidence in this case to permit any such assumptions.

■ The Court must next consider whether the tax liability to Plaintiff may be dischargeable under § 523(a)(15). It is undisputed that the obligation arose out of a divorce proceeding. Because this has been established, the burden shifts to Debtor to prove that (A) he is unable to pay them or (B) the benefit of discharge to

Debtor outweighs the detriment to Plaintiff. *Butler v. Butler (In re Butler)*, 277 B.R. 843, 852 (Bankr.M.D.Ga.2002).

■ Debtor argues that he does not have the ability to pay. Currently, his monthly income is $3,000. His lowest average monthly expenses are $2,999. Debtor's expenses are, for the most part, quite frugal. His budget makes no provision for such basic expenses as entertainment and clothing. Two of the larger expenses, phone service and tractor payment, are necessary for his employment. As it stands now, he is just breaking even each month.

Plaintiff has suggested that Debtor is deliberately underemployed, but there is no evidence to support her contention. Debtor is engaged in the same type of business he operated prior to the divorce, so he has not abandoned reliance on his special skills in favor of unskilled or menial employment. To the extent the parties enjoyed a better standard of living prior to the divorce, Debtor has indicated that this was due at least in part to the criminal activity that resulted in his incarceration. Based on these facts, the Court is persuaded that Debtor does not have the ability to pay the tax obligation. Consequently the two tax obligations of $2,934 and $623 are dischargeable.

*Conclusion*

Debtor's obligations to reimburse Plaintiff $3,000 for mortgage payments she made and $453 for a utility bill are in the nature of support and cannot be discharged. Therefore, the Court will enter judgment for Plaintiff as to the mortgage and utility debts. Debtor's obligation to reimburse Plaintiff for certain tax liabilities is not in the nature of support. Because Debtor has no income in excess of his modest expenses, he does not have the ability to pay the tax obligation. There-

fore, the Court will enter judgment for Debtor as to the tax debt.

An Order in accordance with this Opinion will be entered on this date.

## ORDER

In accordance with the Memorandum Opinion entered on this date, the Court hereby enters JUDGMENT for Plaintiff with respect to Debtor's obligation to reimburse Plaintiff for $3,000 in mortgage payment and to reimburse her for a $453 utility bill.

The Court further hereby enters JUDGMENT for Debtor–Defendant with respect to Debtor's obligation to reimburse Plaintiff for $2,934 and $623 in income tax payments.

So ORDERED.