Donna Migneault v. Jeffrey Migneault  CV-98-498-PB  05/18/99

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Donna Migneault</u>

    v.                             Civil No. 98-CV-498-B

<u>Jeffrey R. Migneault</u>

<u>MEMORANDUM AND ORDER</u>

Jeffrey Migneault filed a voluntary Chapter 7 bankruptcy proceeding in the District of New Hampshire Bankruptcy Court on July 22, 1997.  Three months later, his ex-wife, Donna Migneault, commenced an adversary proceeding, arguing that a $12,000 debt that her ex-husband owed her pursuant to their divorce decree should be deemed non-dischargeable.  The Bankruptcy Court agreed and Migneault's ex-husband has appealed.  For the reasons explained below, I affirm the Bankruptcy Court's decision.

**I. <u>BACKGROUND</u>**[1]

Jeffrey and Donna Migneault were divorced on November 20, 1996, after 11 years of marriage.  <u>See</u> Memorandum Opinion of Bankruptcy Court (hereinafter "Order") of June 30, 1998 at 1-2.

---

[1]  **Unless otherwise noted, facts are taken from the stipulated-to "Statement of Facts" submitted as part of Jeffrey Migneault's brief to this court.**

Under the terms of their divorce decree, primary physical custody of the parties' three minor children, Danielle, Courtney, and Madison, was awarded to Donna Migneault. At the time of the divorce, Jeffrey Migneault was the business manager of an auto dealership, Toyota-Volvo of Keene, earning at least $70,000 per year.

Jeffrey Migneault was initially required by the divorce decree to continue to pay the mortgage, utility, and maintenance expenses on the parties' marital home on Sand Hill Road in Peterborough, New Hampshire, as well as child support payments of $250 per week. After the completion of the school year in June 1997, Donna Migneault and the children were to vacate the marital home, with child support payments increasing to $428 per week, and alimony payments commencing at $450 per month. After several modifications of the divorce decree prompted by Donna Migneault's plans to move out-of-state, and the impending termination of Jeffrey Migneault's employment at Toyota-Volvo of Keene, child support and alimony payments were set at $1,300 per month, and $200 per month respectively.

Jeffrey Migneault also was obligated under the divorce decree to pay a total of $12,600, in 18 monthly payments of $700, to compensate Donna Migneault for her share of the equity in their jointly-held marital home. See Order at 2. At the closing

-2-

on the sale of the premises, Donna Migneault insisted on and received $3,520 from the broker working for her ex-husband in exchange for her signature on the deed. She also obtained a $400 payment from her ex-husband on another occasion. Thus, Donna Migneault agrees that the $12,600 debt has been reduced to $8,650.

On July 22, 1997, Jeffrey Migneault filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Donna Migneault filed a complaint on October 20, 1997, objecting to the discharge of the $8,650 divorce-related debt.

Jeffrey Migneault left his position at the auto dealership on October 31, 1997, and is now employed by A.G. Edwards as an investment broker. After three months of training during which he earned a fixed salary of $3,500 per month, Jeffrey Migneault became a licensed stockbroker and began earning a minimum guaranteed base salary of $2,200 per month, plus an unlimited level of commissions.

Donna Migneault was not employed outside the home during the marriage. For a period of time after the divorce, she worked at Nutri-Ceuticals, Inc., in Florida, earning $2,381.50 per month. She currently works as the part-time office manager at a law firm, earning approximately $900 per month.

## II. **STANDARD OF REVIEW**

Bankruptcy Rule 8013 provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Conclusions of law by the Bankruptcy Court are reviewed *de novo*. See <u>In re Gamble</u>, 143 F.3d 223, 225 (5th Cir. 1998); <u>In re Hamilton</u>, 125 F.3d 292, 295 (5th Cir. 1997). I apply these standards in ruling on Jeffrey Migneault's appeal.

## III. **DISCUSSION**

The Bankruptcy Court based its dischargeability ruling on 11 U.S.C. § 523(a)(15), which provides that a debt is not dischargeable in bankruptcy if it is a debt

> not of the kind described in paragraph (5)[2] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a government unit unless –
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of

---

[2] 11 U.S.C. § 523(a)(5) makes certain alimony, maintenance and support orders non-dischargeable regardless of the debtor's ability to pay. Donna Migneault has not appealed from the Bankruptcy Court's conclusion that the debt at issue is not covered by paragraph (5).

-4-

> the debtor or a dependent of the debtor and,
> if the debtor is engaged in a business, for
> the payment of expenditures necessary for the
> continuation, preservation, and operation of
> such business; or
>    (B) discharging such debt would result in a
> benefit to the debtor that outweighs the
> detrimental consequences to a spouse, former
> spouse, or child of the debtor.

Although § 523(a)(5) is clumsily worded, it provides an exception to the general rule of dischargeability for debts that are incurred in the course of divorce or separation proceedings and an exception to the exception for cases in which either the debtor lacks an ability to pay the debt or the debtor will obtain a benefit from having the debt discharged that outweighs any harm that the creditor will suffer as a result of the discharge.

In granting Donna Migneault's request that the debt should be deemed non-dischargeable, the court determined that Jeffrey Migneault had the burden of proving that the debt should be discharged because he lacks the ability to pay. The court also relied on its estimation of Migneault's future earning capacity in rejecting his inability to pay argument. Finally, having placed the burden of proof on Donna Migneault with respect to the balance of benefit and harms issue, the court concluded that the harm that Donna Migneault would suffer if the debt was discharged outweighed any benefit that Jeffrey Migneault would obtain from

the discharge. Jeffrey Migneault challenges each of these determinations.

## A.    **The Burden of Proof**

The bankruptcy court properly placed the burden of proving the applicability of the "Inability to Pay" exception on Jeffrey Migneault. Such a finding is both consistent with the language of § 523(a)(15) and supported by public policy considerations.

Section 523(a)(15) creates an exception to the general discharge in bankruptcy for property settlement awards, and section 523(a)(15)(A)("Inability to Pay") creates an exception to the exception, making the debt dischargeable in cases where the debtor-spouse is unable to pay. Long established case law holds that "the party claiming the exception to a statutory provision is required to prove the exception." Hill v. Smith, 260 U.S. 592, 595 (1923). Consistent with that understanding, it was Jeffrey Migneault's burden to show his inability to pay under § 523(a)(15)(A), as the bankruptcy court decided.

Allocating the burden of proof on the inability to pay issue to the debtor is also consistent with sound public policy. Such an allocation clearly places the burden of proof on the individual likely to be in possession of the evidence necessary to prove the exception. Thus, requiring the debtor-spouse to prove his "Inability to Pay" properly places the burden of proof

-6-

on the individual who is seeking to invoke the exception and who is in the best position to uncover the evidence that pertains to the exception.

While I am mindful that the general purpose of bankruptcy is to provide the debtor with a "fresh start," § 523(a)(15) represents a legislative decision by Congress to exempt divorce-related property settlements from discharge in bankruptcy. See In re Jodoin, 209 B.R. 132, 140 n. 22 (quoting Grogan v. Garner, 498 U.S. 279, 287 (1991)). I have considered the reasoning of In re Butler, 186 B.R. 371 (Bankr. D. Vt. 1995), and the decisions of the other courts which would place the burden on proof on the creditor-spouse, and find their arguments unpersuasive.[3] Accordingly, I conclude that the bankruptcy court properly placed the burden of proving the "Inability to Pay" exception under § 523(a)(15)(A) on Jeffrey Migneault, the debtor-spouse.

---

[3] As Jeffrey Migneault argues, many of these courts attempt to distinguish § 523(a)(15) from other non-dischargeable debt provisions under § 523(a), including payment of taxes, § 523(a)(1), and repayment of student loans, § 523(a)(8). As the argument goes, under § 523(a)(15), the creditor-spouse must make a prompt claim of non-dischargeability to prevent the property settlement from being discharged, see Bankr. R. 4007(c), whereas no such prompt claim is required under the other provisions. I find this argument unconvincing, however, because I do not read this "housekeeping detail," which requires creditor-spouses to raise their outstanding property settlement disputes promptly, as evidence of Congress' intent to place the burden of proof under § 523(a)(15)(A)&(B) on the creditor-spouse.

**B.   The Inability to Pay Exception**

Jeffrey Migneault testified at the bankruptcy hearing that his monthly income was $2,200 plus commissions, while his monthly expenses totaled more than $3,600.  The bankruptcy court, however, considered Jeffrey Migneault's future earning potential as a factor in determining that he had the ability to pay the debt over time.  See In re Slover, 191 B.R. 886, 892 (Bankr. E.D. Okla. 1996)("This court may consider the income that the Debtor is capable of producing. . .");  In re McCartin, 204 B.R. 647, 654 (Bankr. D. Mass. 1996)(holding that the Debtor's future earning potential is an important factor to be considered);  In re Taylor, 191 B.R. 760, 766 (Bankr. N.D. Ill. 1996)(holding that proper construction of § 523(a)(15)(A) requires the court to consider a debtor's future ability to pay the claim over time).  But see, In re Hesson, 190 B.R. 229, 237 (Bankr. D. Md. 1995)(noting that "if the debtor has no "disposable income" to fund payment of the obligation, the debtor prevails, and the exercise is over");  In re Dressler, 194 B.R. 290, 305-06 (Bankr. D.R.I. 1996)(noting that evaluating the debtor's circumstances at the time of trial provides for a more accurate analysis of the circumstances);  In re Marquis, 203 B.R. 844, 851 (Bankr. D. Me. 1997)(same).

Jeffrey Migneault offers several arguments as to why the bankruptcy court erred in relying  on his future earning

-8-

potential in determining his ability to pay under §523(a)(15) (A), including (1) that because the "Inability to Pay" exception is written in the present tense, only the time of trial can be used in determining the debtor-spouse's ability to pay; and (2) that the use of future earning potential to determine a debtor-spouse's ability to pay, and a subsequent ruling that the debt is non-dischargeable, might subject debtor-spouses to "draconian [contempt] orders" from state divorce courts. I am unconvinced by these arguments.

As another court recently noted in rejecting similar arguments,

> "this Court's inquiry. . . is not controlled by a mere 'snapshot' of the debtor's financial strength as of a single moment in time. Rather, this inquiry must allow a court to consider the debtor's prospective earning ability. . . . the court has no ability to revisit a debtor's financial circumstances after the conclusion of the trial on the 11 U.S.C. § 523(a)(15) issues. Given the relative ease with which a party could manipulate an inquiry based upon any single moment in time, cases under 11 U.S.C. § 523(a)(15) would be decided solely upon the timing of the filing of the bankruptcy and required complaint, unless a court can weigh the debtor's earning potential. We therefore hold that a Court may consider facts and circumstances concerning a debtor's future earning potential, as well as his or her income as of the date of the trial of the 11 U.S.C. § 523(a)(15) action in determining his ability to pay."

Smither, 194 B.R. 102, 107 (Bankr. W.D. Ky. 1996). I agree that taking account of a debtor's earning capacity when evaluating an

inability to pay claim both upholds the underlying purpose of 11 U.S.C. § 523(a)(15) and best guards against potential abuses. Accordingly, I conclude that the bankruptcy court properly considered Jeffrey Migneault's potential future income in determining his ability to pay under § 523(a)(15)(A).

The bankruptcy court made the factual determination, based on the evidence and testimony presented at the hearing, that Jeffrey Migneault's future earning potential as a stockbroker was not so speculative and conjectural that it rendered him incapable of paying the $8,650 owed under the property settlement. Because the bankruptcy court properly considered Jeffrey Migneault's future earning potential in determining his "Inability to Pay" under § 523(a)(15)(A), and because the court's subsequent evaluation of the facts and its conclusion that Jeffrey Migneault could pay the property settlement were not clearly erroneous, I affirm.

## B. **The Greater Benefit Exception**

The First Circuit has not determined which party bears the burden of proving the applicability of the "Greater Benefit" exception under § 523(a)(15)(B). The bankruptcy court placed the burden of proof, however, with respect to this issue on Donna Migneault - a position which Jeffrey Migneault, for obvious

reasons, did not contest in his appeal.[4]  Notwithstanding its
decision on the burden of proof, the court ultimately ruled in
Donna Migneault's favor, finding that the harm she would suffer
as a result of the discharge was greater than any benefit that
her ex-husband could obtain through a discharge of the debt.

In reaching this conclusion, the court evaluated a number of
facts.  Specifically, it considered that: (1) Donna Migneault had
custody of the couple's three minor children, and was raising
them on her own; (2) she could not take a full-time job, because
doing so would leave her incapable of attending to the needs of
her children; (3) the cost of additional daycare would negate the
additional income she might earn from increasing her hours; and
(4) her monthly daycare expenses already exceed her monthly
income, and her alimony and child support payments have since
been reduced.  In contrast, the court also determined that
Jeffrey Migneault had the ability to pay the debt based upon his
future earning capacity.  Although I might not reach the same
conclusions when reviewing the matter *de novo*, I cannot say that
the bankruptcy court's balancing of harms was clearly erroneous.

---

[4]  While Donna Migneault notes in her brief that "Appellee
respectfully suggests that the Bankruptcy Court incorrectly
imposed the burden of persuasion on her relative to § 523(a)(15)
(B)," she did not cross-appeal this ruling.

Because the bankruptcy court's balancing of harms under § 523(a)(15)(B) was not clearly erroneous, I affirm the court's decision finding that the "Greater Benefit" exception, § 523(a)(15)(B), is inapplicable in this case.

## IV. CONCLUSION

The Bankruptcy Court's decision holding that the property settlement debt in the amount of $8,650 is non-dischargeable under § 523(a)(15) and remains due to Donna Migneault is affirmed.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

May 18, 1999

cc:  James Davis, Esq.
     Greenville Clark, Esq.