**In re Candace B. RUSHLOW, Debtor.**

**Kim Rushlow, Plaintiff,**

**v.**

**Candace Rushlow, Defendant.**

**Bankruptcy No. 01–10324–CAB.
Adversary No. 01–1030.**

United States Bankruptcy Court,
D. Vermont.

May 3, 2002.

Joshua B. Lobe, Burlington, VT, for Plaintiff.

David R. Edwards, Burlington, VT, for Debtor/Defendant.

## MEMORANDUM OF DECISION DECLARING DEBT TO BE PARTIALLY DISCHARGEABLE AND GRANTING RIGHT OF SET–OFF

COLLEEN A. BROWN, Bankruptcy Judge.

The debtor's former husband disputes the debtor's right to discharge a property distribution obligation set forth in the parties' Final Order of Divorce. The fundamental issue to be determined by the Court is whether the parties have sustained their respective burdens of proof under 11 U.S.C. § 523(a)(15). After considering the evidence presented and observing the credibility of the witnesses, the Court enters the following findings of fact

and conclusions of law pursuant to Fed. R.Civ.P. 52(a) as adopted by Fed. R.Bankr.P. 7052.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and this Court has exclusive jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b) and 157(a) & (b)(1).

## FACTS

The instant dispute arises from the following provision in the parties' Final Order of Divorce dated May 2, 1990:

[Wife] shall continue to reside in and shall have the sole ownership, possession and control of the jointly owned land and premises on Christopher Road in Alburg Springs, Vermont, subject to the encumbrances which she agrees to assume and pay and hold the [husband] harmless therefrom. [Husband] shall transfer all right, title and interest in the property to the [wife]. [Wife] shall pay to the [husband] when the youngest child reached 18, the [wife] remarries, or [wife] moves or sells the premises, the sum of $21,600 together with interest at the rate of 6% per annum from the date of this Stipulation until paid. . Plaintiff shall execute a note and second mortgage in accordance with the terms of this provision in order to secure the [husband's] interest in his equity in the premises. The parties agree and acknowledge that this amount has been determined as follows: $80,000—gross sale price; $4,800—real estate commission; and $32,000—mortgage, equals $43,200 divided by two equals $21,600.

Par. 4, Final Order entered in Franklin Superior Court on May 2, 1990 in the matter of *Candace Rushlow v. Kim Rushlow* [Docket no. S202–88Ff](hereafter "Final Order"). Hence, it is clear that the defendant was obligated by this provision to pay her former husband $21,600, plus interest (hereafter "the subject debt"), based upon the parties' computation of the value of one-half of the net equity in the former marital residence. The plaintiff secured his right to payment by a mortgage, as provided for in the above-referenced provision.

On December 19, 1993, upon request of the defendant, the plaintiff voluntarily discharged the mortgage he held against the former marital residence, so that the defendant could refinance the mortgage debt and use the proceeds to make improvements to the property. There is no dispute that the defendant used the proceeds of the refinance to improve the property. There is also no dispute that two of the events which trigger the defendant's obligation to pay have occurred: the property was sold in October, 2000 and the parties' son [their youngest child] attained the age of 18 in November, 2001. The following other critical facts are also undisputed. As of the date of the defendant's bankruptcy filing, May 16, 2001, the debt to the plaintiff was wholly unsecured, the defendant had not made any payments on the subject debt, and the balance due, with interest, was approximately $35,856. Furthermore, pursuant to a state court contempt proceeding initiated by the plaintiff on November 2, 2000, the defendant was under a state court order to make payment in full or agree to a repayment plan within 90 days of December 18, 2000.

The parties have stipulated that the three material facts in dispute are: (1) the income and expenses of each party; (2) the defendant's ability to pay the subject debt to the plaintiff; and (3) the relative values of the plaintiff's need for repayment of the subject debt and the hardship the defendant would suffer if forced to make repayment. The defendant has interposed a counterclaim of setoff alleging that the plaintiff owes her approximately $9,300 for

child support arrears as of the date of filing, plus any installments that may have accrued thereafter, pursuant to a state court judgement, and requesting this obligation be set off against any debt she is directed to repay in this proceeding. The plaintiff does not dispute the validity of the child support obligation but claims he has made payments since the filing of the petition and opposes any setoff.

A trial was held on November 13, 2001. Both spouses testified as to their financial situations and the circumstances surrounding the sale of the former marital residence. The Court reserved its decision and requested that the parties file memoranda of law in support of their respective positions.

### DISCUSSION

Section 11 U.S.C. § 523(a)(15) provides:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce ... or in connection with a ... divorce decree or other order of a court of record, ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, for-

mer spouse or child of the debtor;

This provision is far from a model of clarity and its multiple negatives make its statutory construction challenging. However, it is clear that in order to prevail under this statute a plaintiff/creditor must file a timely adversary proceeding and establish that the subject debt meets the definition set forth in the opening phrase. What is less clear is which party has the burden of proof with respect to subsections (A) and (B).

This Court (Conrad, J.) has previously held that a plaintiff/marital creditor must prove the elements set forth in either (A) or (B). *In re Butler*, 186 B.R. 371 (Bankr. D.Vt.1995). Although the parties have stipulated that *Butler* controls on the issue of burden of proof, this Court is not bound by a stipulation between the parties concerning questions of law. *See In re Milburne*, 77 F.2d 310 (2nd Cir.1935) (court cannot be controlled by agreement of counsel on subsidiary question of law); *see also King v. United States*, 641 F.2d 253, 258 (5th Cir.1981) (district court properly disregarded stipulation of burden of proof in tax refund case); *In re Mulcahy*, 3 B.R. 454, 455 (Bankr.S.D.Ind.1980) (stipulation by parties concerning questions of law are not binding on the bankruptcy court). For the reasons set forth below, it is this Court's position that once a creditor has met his or her threshold burden of proof as to the applicability of this provision to a marital debt, the burden shifts to the debtor to establish satisfaction of the criteria set forth in either subsection (A) or (B) of § 523(a)(15). Accordingly, the Court will not apply the *Butler* ruling in determining the burden of proof in § 523(a)(15) proceedings.

### 1. *Nature of the Debt*

In the instant case, the Court finds that the subject debt is indeed not "actually in

the nature of alimony, maintenance or support" and therefore it meets the initial criteria that it is a debt "not of the kind described in paragraph (5) [of § 523(a)]." The provisions in the parties' divorce decree do not label the subject obligation as support and neither party argued or presented any proof that the subject debt meets the requirements of "support." *See Forsdick v. Turgeon,* 812 F.2d 801 (2nd Cir.1987)(characterization of award is indicative of its nature as well as the underlying facts and circumstances of divorce decree); *In re Rosen,* 232 B.R. 284 (Bankr. E.D.N.Y.1999)(spouse seeking determination that obligation is nondischargeable on grounds that it is in nature of alimony, maintenance or support has burden of proof). It is undisputed that the debt arose in a divorce decree entered by a state family court of record, as required by the other defining criteria set forth in the statute. Thus, the Court finds that the subject debt meets the threshold requirements for exception from discharge under § 523(a)(15).

### 2. *Burden of Proof*

The question of which party has the burden· of proof under § 523(a)(15) has caused considerable controversy. *See Using Bankruptcy Court to Modify Domestic Relations Decrees: Problems Created by § 523(A)(15),* 31 Family Law Q. 433, 449 (1997)("The courts are not in agreement as to who has the burden of proving the elements of dischargeability under § 523(a)(15)"), and cases referenced therein. There are four elements set forth in § 523(a)(15):

(1) the debt arose out of a domestic relations case and is set forth in an agreement or court order; and

(2) the debt is not actually for alimony or support; and

(3) the debtor lacks the ability to pay it; or

(4) discharging the debt would result in a benefit to the debtor which is greater than the detriment the creditor would suffer from discharge of the debt.

*Id.; see also In re Butler,* 186 B.R. at 374.

Typically, this Court affords substantial deference to its prior rulings on matters of statutory construction. However, *Butler* was a case of first impression in this Court and its determination that the burden of proof on all elements must fall upon the marital creditor does not appear to withstand subsequent scrutiny by the majority of our sister courts. For representative cases rejecting the *Butler* analysis, see generally *Migneault v. Migneault,* 243 B.R. 585, 588 (D.N.H.1999); *In re Moeder,* 220 B.R. 52, 56 (8th Cir. BAP 1998); *In re Jodoin,* 209 B.R. 132, 139 (9th Cir. BAP 1997); *In re Williams,* 271 B.R. 449, 453 (Bankr.N.D.N.Y.2001); *In re Foto,* 258 B.R. 567, 575 (Bankr.S.D.N.Y.2000). It appears that the case law on this question has evolved away from allocating the burden of proof entirely upon the marital creditor. *See* Debra L. Leahy, *Divorce Property Settlements Are Now Non–Dischargeable; Or Are They?,* 22 Vt. B.J. & L. Dig. 29 (June, 1996). This Court is persuaded that the more compelling interpretation of this provision is that the burden of proof in § 523(a)(15) cases shifts to the debtor once the creditor makes the *prima facie* showing that the debt in question fits within the parameters of § 523(a)(15). *Cf. In re Williams,* 271 B.R. at 453 (also rejecting its earlier holding that the creditor had the burden of proof on all issues in favor of the current majority view).

■ The burden of proof under § 523(a)(15) is in fact essentially the same as under § 523(a)(8). Once the creditor

establishes that a marital debt is generally eligible for exception from discharge, a presumption is created in favor of excepting the debt from discharge and the burden shifts to the debtor. In order to discharge the debt, the debtor must rebut the presumption by establishing by a preponderance of the evidence one of two circumstances set forth in § 523(a)(15)(A) or (B), respectively. The debtor can discharge the obligation either by showing that the debtor is unable to pay the obligation under subsection (A), or by showing under subsection (B) that notwithstanding his or her ability to pay the obligation, the benefit to the debtor of discharging the debt outweighs any detriment the creditor would suffer from such discharge. *See In re Crosswhite,* 148 F.3d 879 (7th Cir.1998); *In re Molino* 225 B.R. 904 (6th Cir. BAP 1998); *In re Jodoin,* 209 B.R. 132 (9th Cir. BAP 1997); *In re Pino,* 268 B.R. 483 (Bankr.W.D.Tex.2001); *In re Romer,* 254 B.R. 207 (Bankr.N.D.Ohio 2000); *In re Simons,* 193 B.R. 48 (Bankr.W.D.Okla. 1996); *In re Carroll,* 187 B.R. 197 (Bankr. S.D.Ohio 1995). Hence, if the debtor does not have the financial capacity to pay the obligation the inquiry ends and the debt is discharged. But, if the debtor has the financial ability to pay the obligation the court must weigh the relative value and burden repayment would yield to the two parties, and make its ultimate determination based upon the balancing of the equities presented.

As indicated above, the creditor herein has made a *prima facie* showing that the subject debt fits within the scope of § 523(a)(15). Therefore, the Court finds that the plaintiff has created a presumption that the debt should be excepted from discharge, and shifts its focus to whether the debtor has established one of the two grounds for rebutting that presumption by a preponderance of the evidence.

3. *Whether the Defendant Has the Ability To Pay This Debt* [§ 523(a)(15)(A)]

■ The defendant produced evidence at the hearing that she cannot afford to repay the subject debt in the amount of approximately $35,856. The defendant's testimony establishes that, as of the date of the bankruptcy filing, she had approximately $100 per month of net disposable income; that she drives a new, rather expensive car; that she supports her 18 year old son; and that she has a 401(k) retirement plan, which she can borrow against under certain circumstances, with a current balance of between $50,000 and $60,000. The plaintiff asserts that arguably each of these factors alone, and certainly all of the factors taken together, require a finding that the debtor has failed to show that she cannot afford to pay the subject debt and therefore that the debt should be excepted from discharge under § 523(a)(15)(A).

■ The critical computation for determining ability to pay is disposable income. *See In re Greenwalt,* 200 B.R. 909 (Bankr.W.D.Wash.1996); *In re Hill,* 184 B.R. 750 (Bankr.N.D.Ill.1995). It should be noted at the outset that it is this Court's position that exempt assets, such as the 401(k) plan here, should not be considered in determining the debtor's disposable income in general or the debtor's ability to pay under this provision.[1] *See In re Solomon,* 67 F.3d 1128 (4th Cir. 1995); *Education Assistance Corp. v. Zellner,* 827 F.2d 1222 (8th Cir.1987); *In re*

---

**1.** If the retirement funds were not exempt for some reason, e.g., if they were not necessary for the reasonable support of the debtor and her dependents, *see* 12 V.S.A. § 2740, then they would indeed be relevant to this inquiry. However, there has been no proof presented on this point.

*Kerr,* 199 B.R. 370 (Bankr.N.D.Ill.1996); *In re Stones,* 157 B.R. 669 (Bankr.S.D.Cal. 1993).

Determinations of what constitutes "disposable income" must be made on a case-by-case basis. *See Farm Credit Bank v. Hurd,* 105 B.R. 430 (W.D.Tenn. 1989). The plaintiff urges this Court to find that the support the defendant is providing to her adult child is not legally required and therefore should be excluded from the list of reasonable expenses for purposes of computing the defendant's disposable income. The Court declines to do so. Congress has made clear that it assigns a higher priority to family obligations than to general unsecured debts. *See e.g.,* § 507(a)(7); *see also In re Hill,* 184 B.R. 750, 752–53 (Bankr.N.D.Ill.1995) (discussing congressional intent to protect marital creditors). Even though the subject debt is owed to a former spouse, it is not in the nature of support and therefore is a general unsecured claim, not entitled to priority, and should not be paid at the expense of the debtor's support of her child. As a general rule, except where the support is demonstrated to be excessive or of an unreasonable level, the support of one's children—even when they are over the age of minority—or other family members will be deemed a legitimate expense for purposes of computing disposable income in this District, absent extraordinary circumstances or bad faith. *Cf. In re Meyer,* 173 B.R. 419, 426 (Bankr.D.Kan.1994)(reasonable expenses for education and support of adult children may be deducted when determining disposable income)(and cases referenced therein).

The computation of disposable income is made based upon the income and expenses as of the date of trial, not as of the date of the petition. *See In re Jodoin,* 209 B.R. 132, 142 (9th Cir. BAP 1997); *see*

*also In re Pino,* 268 B.R. 483, 498 (Bankr. W.D.Tex.2001). In this instance, the credible testimony reflects a diminution in the debtor's disposable income between the date the petition was filed and the date of trial. Upon the 18th birthday of the parties' son, the defendant's income was reduced by the amount of child support paid prior to his attaining the age of majority. *See* Final Order of Divorce, par. 6. The credible proof presented indicated that the defendant's post-petition annual bonus income was insufficient to replace the child support income. The Court does find, however, that the defendant could obtain reliable transportation for a price less than her car payment as of the date of the trial. While certain less significant expenses could be reduced for the purpose of computing the defendant's disposable income, the defendant candidly testified that several of her expenses had increased since the filing of the petition which essentially offset the potential savings from less expensive transportation.

The Court finds the defendant's testimony to be credible, her budget to be generally reasonable, and her disposable income to be approximately $100 per month, even with inclusion of the full amount of the potential annual bonus. Accordingly, this Court finds that the debtor has established that she cannot afford to pay the debt in full. However, this begs the question of whether the defendant can afford to pay a part of the debt and, if so, whether the defendant can be compelled to do so under § 523(a)(15).

### 4. *Partial Discharge of the Debt*

Section 523(a)(15) is structured similarly to § 523(a)(8) in that both provisions begin by creating a presumption of non-dischargeability and then set forth grounds which the debtor may establish to rebut the presumption. Both subsections

also reflect particular social policy priorities of Congress. The student loan exception reflects Congress's desire to encourage repayment of federally -guaranteed student loans so that there are funds available for other deserving student borrowers. The divorce debt provision reflects Congress's recognition of the unique relationships involved in spousal obligations. *See In re Hesson,* 190 B.R. 229, 233–36 (Bankr.D.Md.1995)(discussing legislative history and congressional intent involved in enactment of § 523(a)(15)). Although the debtor is entitled to a fresh start, § 523(a)(15) reflects a balancing between the debtor's right to a fresh start and the right of former spouses and children of debtors to rely upon promises made by the debtor in the context of family dissolution. In effect, it appears that in creating this provision Congress was striving to ensure that the debtor's fresh start is not taken out of the hide of the debtor's former spouse or children of a former marriage. Unlike any other provision of the Bankruptcy Code, § 523(a)(15) requires the court to consider the impact of the discharge on the affected creditor and to permit the discharge only if the debtor can prove an inability to repay the subject debt or can prove that the creditor can more easily absorb the loss than the debtor can absorb the obligation. It might be said that this provision creates a sort of sliding scale discharge when spousal non-support debts are at stake.

While there is a split of opinion among the courts which have considered this issue, and the statute does not make the answer clear, it is our determination that an "all or nothing" approach to the discharge of property settlement debts is not mandated by the language of the statute. *Accord In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995). In fact, the balancing provision set forth in subsection (B) suggests that Congress intended the bankruptcy courts to use their discretion and look to the equities of the parties when ruling on § 523(a)(15) complaints. Many other courts have carefully analyzed the language of this provision, the legislative history of § 523(a)(15), and the Supreme Court's rulings on analogous statutes, and reached the conclusion that the courts have the authority to find debts partially dischargeable under this provision. *See, e.g., In re Cheesman,* 25 F.3d 356 (6th Cir.1994); *In re Pino,* 268 B.R. 483, 498 (Bankr.W.D.Tex.2001); *In re Armstrong,* 205 B.R. 386, 392–94 (Bankr.W.D.Tenn. 1996); *In re Greenwalt,* 200 B.R. 909, 914 (Bankr.W.D.Wash.1996); *In re Cleveland,* 198 B.R. 394 (Bankr.N.D.Ga.1996); *In re McGinnis,* 194 B.R. 917 (Bankr.N.D.Ala. 1996); *In re Smither,* 194 B.R. 102, 107 (Bankr.W.D.Ky.1996); *In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995).

The issue of determining how much the debtor can pay requires the same analysis bankruptcy courts regularly employ when determining the amount of disposable income a debtor has to fund a chapter 13 plan. Although it is not an exact science, it is a determination well within the bailiwick of bankruptcy courts.

After reviewing the debtor's income and expenses, it appears that the defendant-debtor could afford to pay $100 per month to the plaintiff-creditor during the next two (2) years. Based upon her age, employment status and financial circumstances, it is reasonable to project that the debtor will have additional disposable income available to her thereafter, as her son grows older, improves his prospects for producing income and lives independently. At the conclusion of two years the defendant should be in a position to pay $300 per month. Therefore, it is this Court's finding that the debtor will be able to repay the debt if the amount of debt excepted from discharge is limited to

$13,000, plus interest at the divorce decree rate of 6% per annum commencing from the date of this decision, and that repayment could be accomplished within a reasonable amount of time. The balance of the outstanding marital obligation shall be discharged.[2]

### 5. Balancing of Benefit and Detriment Between the Parties [§ 523(a)(15)(B)]

Since we have found that there is some amount that the debtor can afford to pay to the defendant, we must next determine whether the equities favor requiring the debtor to repay it. Based upon the evidence presented, the Court cannot find that the defendant has shown the discharge of the debt to be more valuable to her than the repayment of the debt would be to her former spouse. The defendant has failed to demonstrate that the benefit she would experience if the debt were discharged is greater than the detriment the plaintiff would suffer if the defendant were discharged of her obligation to comply with the directives of the divorce decree. *See In re Crosswhite*, 148 F.3d 879 (7th Cir.1998); *In re Gamble*, 143 F.3d 223 (5th Cir.1998); *In re Morris*, 197 B.R. 236, 245 (Bankr.N.D.W.Va.1996). In reaching this determination, the Court has considered the totality of the circumstances, *see In re Crosswhite*, 148 F.3d at 888, including the following non-exclusive list of factors:

1. The amount of debt involved, including all payments terms;

2. The current income of the debtor and objecting creditor;

3. The current expenses of the debtor and objecting creditor;

4. The current assets, including exempt assets of the debtor and objecting creditor;

5. The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor and of the objecting creditor;

6. The health, job skills, training, age and education of the debtor and objecting creditor;

7. The dependents of the debtor and objecting creditor, their ages and any special needs that they may have;

8. Any changes in the financial conditions of the debtor and objecting creditor which may have occurred since the entry of the divorce decree;

9. The amount of the debt that has been or will be discharged in the debtor's bankruptcy case;

10. Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and

11. Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the 11 U.S.C. § 523(a)(15) issues.

*See In re Molino*, 225 B.R. at 909, *citing with approval In re Smither*, 194 B.R. 102, 111 (Bankr.W.D.Ky.1996).

In weighing the equities under subsection (B) in light of the foregoing factors, we have also taken into account the fact that the defendant received $11,764.98[3] net proceeds from the sale of the former

---

**2.** As discussed below, this non-dischargeable obligation in the amount of $13,000 plus interest shall be subject to a set-off based upon any marital support arrears due and owing by the plaintiff/creditor in favor of the defendant/debtor as of the date of this decision.

**3.** The undisputed evidence is that the defendant offered one-half of the net proceeds to the plaintiff in satisfaction of her obligation of the subject debt, but he declined the offer because the funds were insufficient to meet the requirements of the divorce decree.

marital residence and find that to discharge the plaintiff's portion of that sum under the facts and circumstances of this case would constitute unjust enrichment of the defendant. While not determinative, this factor weighs in favor of the creditor with respect to this portion of the debt. On balance, we find it to be equitable that the spousal creditor be deemed entitled to at least an amount equal to one-half of the actual net proceeds from the sale of the former marital residence[4], to the extent the defendant can reasonably afford it.

### 6. The Counterclaim for Set–Off

■ Since the support arrears judgment is a pre-petition debt and the subject property settlement obligation is likewise a pre-petition debt, a set-off of one obligation against the other is appropriate under 11 U.S.C. § 553(a). Accordingly, the defendant's obligation to repay the non-dischargeable portion of the subject debt shall be reduced by the amount of the support arrears judgment due and owing by the plaintiff as of the date of entry of this decision[5]. Thus, the debtor's obligation shall be reduced by the set-off amount. The defendant shall be directed to make payments to the plaintiff, in the amount of $100 per month for twenty-four (24) months, and to commence payments on the first day of the month following entry of this decision, with the balance to be paid in installments of $300 per month thereafter until the adjusted obligation is satisfied. This installment payment schedule does not preclude the defendant from completing payment of her obligation to the plaintiff through a lump sum payment. This payment schedule is imposed to expediently implement both this decision and the outstanding state court order directing the defendant to enter into a payment plan and commence making payments within 90 days of December, 2000.

### CONCLUSION

This Court finds that

(1) the plaintiff has established that the subject debt is subject to exception from discharge under § 523(a)(15);

(2) the defendant has established that she cannot afford to repay the entire debt under 11 U.S.C. § 523(a)(15)(A); but the Court finds that she can reasonably afford to repay $13,000 of the subject debt, plus interest at 6% per annum from the date of this decision, on an installment basis;

(3) the defendant has not proven by a preponderance of the evidence that the benefit she would enjoy through the discharge of the debt outweighs the detriment the creditor would suffer from the debt's discharge under § 523(a)(15)(B), and therefore that $13,000 plus interest should be excepted from discharge; and

4. The Court notes that even though the apparent intent of the subject provision of the divorce decree was to award the plaintiff one-half of the actual equity in the property and by no fault of the defendant the property sold for significantly less than the projected sale price, it is not the role of this Court to second guess the accuracy of the projection at this time. See Johnson v. Johnson, 659 A.2d 1149, 163 Vt. 491 (1995); Williams v. Williams, 613 A.2d 200, 158 Vt. 574 (1992).

5. As indicated above, the defendant alleges in her counterclaim a total support arrearage of $9,300 due and owing by the plaintiff as of the date of filing. In his Answer, the plaintiff denies this amount and testified at trial that he owed child support arrears in the amount of $8,800. With additional support payments apparently submitted to the defendant since the filing of this adversary proceeding, the current amount due is not of record and requires resolution as referenced hereinafter.

(4) the defendant's counterclaim for set-off is granted in the amount of $9,300 as adjusted for payments made and installments incurred to date, if any.

The parties are directed to submit a settled order within ten (10) days consistent with the foregoing terms that reflects the current amount of the debtor's marital obligation after a reduction in the amount of the set-off. In the event the parties cannot agree on the terms of the proposed order or the amount of the set-off, separate proposed orders shall be submitted by each party within ten (10) days, with supporting documentation regarding the amount of support arrears currently due and owing.

### Conclusion

Accordingly, the subject marital debt is excepted from discharge except to the extent of $13,000, plus interest, as set forth above, and is subject to a set-off in the amount of the outstanding marital support arrears due and owing from the plaintiff to the defendant.